**TIOGA PRESERVATION GROUP, Dr. Stephen Ollock, and Patricia Ollock**

v.

**TIOGA COUNTY PLANNING COMMISSION**

**Appeal of: Tioga Preservation Group.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Jan. 23, 2009.

Decided March 3, 2009.

Susan J. Smith, Camp Hill, for appellant.

Jeffrey A. Franklin, Wyomissing, for appellee, AES Armenia Mountain Wind, LLC.

BEFORE: McGINLEY, Judge, LEAVITT, Judge, and FRIEDMAN, Senior Judge.

OPINION BY Senior Judge FRIEDMAN.

Tioga Preservation Group, Dr. Stephen Ollock and Patricia Ollock (collectively, Tioga Preservation) appeal from the August 8, 2008, order of the Court of Common Pleas of Tioga County (trial court), which denied Tioga Preservation's appeal and upheld the decision of the Tioga County Planning Commission (Commission) approving the waiver/modification request filed by AES Armenia Mountain Wind, LLC (AES) and granting preliminary conditional approval of AES's land use application. We affirm.

On September 24, 2007, AES filed a Land Development Application (Application) with the Commission seeking preliminary approval for construction of a wind farm (the Project) on properties located in eastern Tioga County and in Bradford County. The Project was to consist of up to one hundred and twenty-four wind turbines, two substations, transmission lines, private access roads and an operations and maintenance building. (R.R. at 48a–50a.) AES also sought a modification or waiver of the "screening" requirement found in Article VII, section 709.06 of the Tioga County Subdivision and Land Use Ordinance (Ordinance), which requires that natural screening or fencing be provided where an industrial development abuts residential property or other incompatible uses. AES explained that, because of the turbines' height, it would not be feasible to completely screen the wind turbines from view. However, AES indicated that it in-

tended to leave as much of the natural vegetation in place around the Project as would be practical, and, when combined with the setbacks for the wind turbines, this would help shield the homes near the Project from views of the wind turbine towers. AES further stated that, in accordance with the Ordinance, it would include screen plantings around the low-lying structures, and it would fence the substations in accordance with utility safety standards. (R.R. at 11a, 82a.)

The Commission held a series of public meetings to consider the Application and waiver request. As indicated in the Application, AES had executed option agreements to lease over 4,000 acres in Tioga County and had recorded memoranda confirming those options with the office of the Recorder of Deeds of Tioga County. (R.R. at 23a–30a.) AES submitted an example of a recorded memorandum agreement, a list of all the properties under agreement in Tioga County, a representative copy of the "Option Agreement for Wind Energy Lease" (Option Agreement) and a copy of the lease agreement that would go into effect if AES exercised its option. (R.R. at 19a–21a, 31a–36a, 711a–25a.) In addition, AES submitted three volumes of technical and environmental data to support the Application.

At a December 12, 2007, public meeting, Tioga Preservation objected to the Application by letter directed to Jim Weaver, Director of the Commission. (S.R.R. at 21b–24b.) Notwithstanding Tioga Preservation's objection, the Commission granted preliminary conditional approval by voice vote at that hearing. (S.R.R. at 2b.) By letter dated December 18, 2007, the Commission memorialized its approval of the Application subject to AES's satisfaction of all of the conditions set forth by the Commission, including a requirement that AES obtain all of the required permits from various state and federal agencies before a

building permit would be issued. AES accepted the conditions by letter dated January 14, 2008.

On January 17, 2008, Tioga Preservation filed a land use appeal with the trial court, arguing that the Commission abused its discretion or committed an error of law in granting AES preliminary approval of the Project. After considering the parties' arguments and the certified record from the Commission, the trial court rejected all of Tioga Preservation's assertions of error and upheld the Commission's decision. Tioga Preservation now appeals to this court.[1]

■ Tioga Preservation first argues that, because AES holds only an option to lease the subject properties in the future, it does not have the required ownership interest in the properties to make it a proper "applicant" pursuant to section 107 of the Pennsylvania Municipalities Planning Code (MPC),[2] and, therefore, the Commission erred in considering the Application. Although Tioga Preservation is correct that AES's future interest in leasing the subject properties does not, by itself, confer "landowner" status under the MPC,[3] we agree with AES that, through the Option Agreement, the subject property owners confer upon AES the necessary property interest to make it an "applicant" under the MPC.

Section 107 of the MPC defines "applicant" as a "landowner or developer, as hereinafter defined, who has filed an appli-

cation for development including his heirs, successors and assigns." 53 P.S. § 10107. A "landowner" is defined as "the legal or beneficial owner or owners of land including the holder of an option or contract to purchase (whether or not such option or contract is subject to any condition), a lessee if he is authorized under the lease to exercise the rights of the landowner, or other person having a proprietary interest in land." *Id.* The MPC does not define "proprietary" or "proprietary interest," but Black's Law Dictionary defines "proprietary" as "[o]f, relating to, or holding as property" and "proprietary interest" as "[t]he interest held by a property owner together with all appurtenant rights." Black's Law Dictionary 829, 1256 (8th ed. 2004).

■ In this case, section 8 of the Option Agreement provides:

*Effect of Option Agreement; Interest in Real Property.* The parties intend that the Option Agreement **create a valid and present interest in the Property** in favor of AES. Therefore, **this Option shall be deemed an interest in and encumbrance upon the Property which shall run with the land and shall be binding upon the Property and Owner** and its successors and assigns and shall inure to the benefit of AES and its successors and assigns. Owner covenants and agrees that during the Option Period, **Owner shall not convey the Property or any interest therein or permit any lien or encum-**

1. Where, as here, the trial court takes no additional evidence, our scope of review is limited to determining whether the governing body has committed an error of law or an abuse of discretion. *Ruf v. Buckingham Township,* 765 A.2d 1166 (Pa.Cmwlth.2001). This court may conclude that the governing body abused its discretion only if its findings of fact are not supported by substantial evidence. *Id.* Substantial evidence is "such relevant evidence as a reasonable mind might

accept as adequate to support a conclusion." *Id.* at 1168.

2. Act of July 31, 1968, P.L. 805, *as amended,* 53 P.S. § 10107.

3. An agreement for a future interest in the subject property, such as an option to lease, is insufficient to confer standing as a "landowner" under the MPC. *Collier Stone Company v. Township of Collier Board of Commissioners,* 735 A.2d 768 (Pa.Cmwlth.1999).

brance to attach to the Property unless the transferee or lien holder, as the case may be, shall agree, in writing, to be bound by this Option Agreement. Owner shall also protect and defend AES's interest in the Property and its rights and benefits under this Option Agreement.

(R.R. at 713a) (emphasis added). A "present interest" is a "property interest in which the privilege of **possession or enjoyment is present** and **not merely future....**" Black's Law Dictionary 829 (8th ed. 2004) (emphasis added). Moreover, section 6 of the Option Agreement grants AES an **exclusive easement** during the option period, allowing AES to enter the property to perform various studies to determine the suitability of the property for the Project. (R.R. at 713a–14a.) It is clear from the terms of the Option Agreement that the owners of the subject properties have granted AES an interest beyond that of a "proposed leaseholder" and have conferred upon AES a proprietary interest in the subject properties. Accordingly, we conclude that AES was a proper applicant under section 107 of the MPC

and that the Commission did not err in considering the Application.

Tioga Preservation next argues that the Commission's decision is void as a matter of law because the Commission violated section 508(2) of the MPC, 53 P.S. § 10508(2), by failing to identify the sections of the Ordinance from which it derived the conditions imposed on AES.[4] However, in making this argument, Tioga Preservation fails to appreciate that the Commission **approved** AES's Application. Because section 508(2) applies only where the governmental body **denies** a land development application,[5] Tioga Preservation's second argument is without merit.

■ Finally, Tioga Preservation asserts that the Commission erred in granting AES a waiver from the Ordinance's screening requirements for the wind turbines because AES offered no information that would permit the Commission to evaluate AES's inability to fully comply with the Ordinance's requirements.[6] Again, we disagree.

Pursuant to sections 503(8) and 512.1(a) of the MPC, 53 P.S. §§ 10503(8)[7] and

---

4. Section 508(2) of the MPC requires the governmental body to specify the defects found in the application, describe the requirements that have not been met and cite the provisions of the statute or ordinance relied upon so that the applicant is provided with a factual basis to assess whether to pursue reconsideration or a legal challenge. *Kassouf v. Township of Scott*, 584 Pa. 219, 883 A.2d 463 (2005). If a governmental body fails to comply with section 508(2), the **applicant** receives the benefit of a deemed approval of the application in the terms as presented. Section 508(3) of the MPC, 53 P.S. § 10508(3); *Kassouf*. There is nothing in section 508(2) or our case law that suggest that this section provides relief for a person other than an applicant.

5. We note that every case cited by Tioga Preservation in support of this argument arose from the **denial** of a land development or subdivision application.

6. Tioga Preservation further contends that the Commission did not engage in any meaningful review of AES's waiver request and alleges that the Commission did not actually grant the waiver request. We disagree. It is clear from the record that the Commission granted the Application, which included AES's request for a waiver from the screening requirements. (S.R.R. at 1b–2b, 13b.) Moreover, even if the Commission did not expressly grant the waiver, it did so implicitly by not expressly rejecting the waiver. *Ruf* (stating that because the governing body did not expressly reject the applicant's requested waivers in its decision, it implicitly granted the waivers).

7. Section 503(8) of the MPC states:

The subdivision and land development ordinance may include, but need not be limited to: ... Provisions for administering waivers or modifications to the minimum stan-

10512.1(a),[8] a governing body or planning agency may administer waivers or modifications from the literal compliance of its ordinance where literal enforcement will exact undue hardship. Article VII, Section 704 and Article IX, Section 902 of the Ordinance both authorize the Commission to grant a modification or waiver where the literal enforcement of the Ordinance's requirements are unreasonable or will result in undue hardship, or where the Commission concludes that the land development plan is an innovative design that advances the purpose of the Ordinance. Moreover, we have held that a waiver is proper where an additional requirement would offer little or no additional benefit and where literal enforcement would frustrate the effect of improvements. *Monroe Meadows Housing Partnership, LP v. Municipal Council*, 926 A.2d 548 (Pa. Cmwlth.2007); *Ruf v. Buckingham Township*, 765 A.2d 1166 (Pa.Cmwlth.2001).

In its Application, AES asserts that it would not be feasible to screen the wind turbines with natural screening, i.e., trees or shrubs, or fences, due to the turbines height of more than 200 feet. (R.R. at 11a, 49a.) AES also explained that the setbacks for the wind turbines will allow for significant natural screening to help shield residences in the immediate vicinity of the turbines from views of the turbines. (R.R. at 11a.) Moreover, the Application clearly indicates that one of the reasons for selecting this location for the Project

was that the wind on the mountain is unobstructed and, therefore, quite strong. (R.R. at 84a.) Denying the waiver and requiring AES to construct 200–foot–high fences around the turbines would unquestionably frustrate the effect of the wind turbines, and the Project as a whole, as it would obstruct the needed wind flow. In addition, it would be unreasonable to require AES to construct such fencing where it would provide little or no additional benefit to the community. Thus, the Commission did not err in granting AES's request for a waiver from the Ordinance's screening requirements.

Accordingly, we affirm.

## ORDER

AND NOW, this 3rd day of March, 2009, the order of the Court of Common Pleas of Tioga County, dated August 8, 2008, is hereby affirmed.

---

dards of the ordinance in accordance with section 512.1, when the literal compliance with mandatory provisions is shown to the satisfaction of the government body or planning agency ... to be unreasonable, to cause undue hardship or when an alternative standard can be demonstrated to provide equal or better results.
   53 P.S. § 10503(8).

8. Added by section 40 of the Act of December 21, 1988, P.L. 1329. Section 512.1(a) provides:

The governing body or the planning agency ... may grant a modification of the requirements of one or more provisions if the literal enforcement will exact undue hardship because of peculiar conditions pertaining to the land in question, provided that such modification will not be contrary to the public interest and that the purpose and intent of the ordinance is observed.
   53 P.S. § 10512.1(a).