# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

SBA Towers IX, LLC and Pittsburgh : 
SMSA Limited Partnership d/b/a : 
Verizon Wireless : 
  : 
  : 
v. : No. 1884 C.D. 2016
  : Argued: November 14, 2017
Unity Township Zoning Hearing Board : 
and Dr. Chris and Jill Bellicini; : 
James and Megan McIntosh; Edward : 
and Kathy Sobota; and Christopher and : 
Lynn Schmauch and Westmoreland : 
County Airport Authority : 
  : 
Appeal of: Dr. Chris and Jill Bellicini, : 
James and Megan McIntosh, : 
Edward and Kathy Sobota, : 
and Christopher and Lynn Schmauch : 

BEFORE: HONORABLE P. KEVIN BROBSON, Judge
HONORABLE ANNE E. COVEY, Judge
HONORABLE J. WESLEY OLER, JR., Senior Judge

OPINION BY JUDGE BROBSON      FILED: February 16, 2018

Appellants Dr. Chris and Jill Bellicini, James and Megan McIntosh, Edward and Kathy Sobota, and Christopher and Lynn Schmauch (Appellants) appeal from an order of the Court of Common Pleas of Westmoreland County (Common Pleas), dated October 27, 2016. Common Pleas reversed the decision of the Unity Township Zoning Hearing Board (ZHB), thereby sustaining SBA Towers IX, LLC's (SBA Towers) appeal of the denial of SBA Towers' and Pittsburgh SMSA Limited Partnership d/b/a Verizon Wireless' (Verizon) application for a special exception (Application). For the reasons discussed below, we reverse.

# I. BACKGROUND

Columbus Home Association (Columbus) is the owner of an 8.9-acre parcel of land (Property) located in Unity Township (Township), Westmoreland County. SBA Towers entered into an Option and Land Lease Agreement (Option Agreement) with Columbus for the lease of a 100-foot by 100-foot section of the Property for the construction, support, and operation of a wireless communications tower facility. The Property is located in an R-1 zoning district. The Unity Township Zoning Ordinance (Ordinance) permits communications towers in an R-1 zoning district by special exception, provided that the applicant establishes that the criteria set forth in Section 118-701(L) of the Ordinance have been met. On January 19, 2016, SBA Towers and Verizon filed their Application with the ZHB, seeking a special exception to construct a 150-foot tall monopole communications tower on the Property. The ZHB conducted a public hearing on the Application on February 23, 2016.

At the hearing, SBA Towers and Verizon presented the testimony of Shreyas Patel (Patel), a radio frequency engineer for Verizon. (Reproduced Record (R.R.) at 114A-15A.) Patel testified that he prepared a radio frequency propagation map to demonstrate to the ZHB the areas within the Township where Verizon has minimal or no coverage. (*Id.* at 115A-16A.) He explained that there is a substantial gap in Verizon's coverage within the Township because the three existing network sites located in the area are lacking coverage and are not providing the necessary signal strength. (*Id.* at 116A-17A, 149A.) Patel testified that Verizon intends to place its antennas on the proposed communications tower at a height of 145 feet, which will provide good signal coverage and will fill the gap in Verizon's coverage. (*Id.* at 117A-18A). He testified further that if the antennas were lowered to 95 feet,

2

Verizon's coverage would be significantly reduced or lost and, therefore, construction of the communications tower at a height of 150 feet is the minimum height necessary to fill Verizon's gap in coverage. (*Id.* at 118A-19A.) While he admitted that a 95-foot tower would provide Verizon with better coverage, Patel indicated that at that height the coverage gap would only be improved by 50 percent. (*Id.* at 127A-28A.)

Patel testified further that Verizon was unable to locate any suitable collocation sites for its antennas within a one-mile radius of the Property. (*Id.* at 120A.) He explained that Verizon considered a nearby water tower, but he indicated that the water tower was too short, was at a lower elevation, and would not have filled the gap in coverage. (*Id.* at 120A-21A, 153A-54A.) He also explained that he did not consider the suitability of four radio towers located near the Property because they were not submitted to him. (*Id.* at 122A, 134A.) Patel did indicate, however, that during his visits to the Property, he did not see a radio tower because "[i]t was really far away." (*Id.* at 146A.) Patel explained further that he did not know whether there were other communications towers located near the Property, but he indicated that no such communications towers had been presented to him for consideration. (*Id.* at 123A-24A.) He also stated that increasing the height of Verizon's antennas at the three existing network sites in the area would not eliminate Verizon's gap in coverage because Verizon has a problem with both signal strength and traffic and is trying to offload traffic from those sites. (*Id.* at 144A-45A, 149A.) Patel stated further that it is also not possible to add additional antennas to those three existing sites because there is a technology limitation. (*Id.* at 145A.) Patel acknowledged further that the letter from Jim Rickard (Rickard), Manager-RF System Design for Verizon, to the Township dated December 18, 2015, was

3

submitted to the ZHB for the purpose of satisfying Section 118-701(L)(2) of the Ordinance, governing human exposure to electromagnetic radiation. (*Id.* at 135A.) In regard thereto, Patel explained that Verizon is always in compliance with Federal Communications Commission (FCC) standards nationwide. (*Id.* at 135A-36A.)

SBA Towers and Verizon also presented the testimony of Tim Stark (Stark) of Wireless Resources, Inc. (*Id.* at 159A.) Stark testified that SBA Towers and Verizon consulted with him to find a suitable location for a communications tower that would increase Verizon's coverage in the Township. (*Id.*) Stark explained that SBA Towers and Verizon required him to present potential collocation sites to Verizon and then Verizon would decide whether those potential sites would provide the necessary coverage to fill its coverage gap. (*Id.* at 162A.) Stark stated that the search ring provided to him by Verizon was "tight" and "close to around Palmer Drive, a little more south." (*Id.*) He explained that Verizon had previously considered the Latrobe High School as a potential collocation site for its antennas, but the ZHB denied its request to utilize that location. (*Id.* at 159A-60A.) Stark explained further that a hotel was also considered as a potential collocation site, but Verizon eliminated it because it was too short, too far west, and too close to existing coverage. (*Id.* at 160A.) He stated that a nearby water tower was also explored and rejected because Verizon deemed it too short. (*Id.*) He also stated that the surrounding radio towers were briefly discussed but determined to be too far south for a potential collocation site. (*Id.*) Stark explained that if the hotel, water tower, or radio towers would have been a sufficient collocation site to fill Verizon's coverage gap, Verizon would have submitted an application to the ZHB for such site. (*Id.* at 160A-61A.) Stark also testified that he was confident that there were no

4

other communications towers or competing structures within a quarter mile of the Property. (*Id.* at 164A.)

SBA Towers and Verizon also submitted into evidence: (1) a letter from the Federal Aviation Administration (FAA), which indicated that the FAA had conducted an aeronautical study and determined that the proposed communications tower did "not exceed obstruction standards and would not be a hazard to air navigation;" and (2) a statement from the Pennsylvania Bureau of Aviation (PBA), indicating that the PBA had no objection "provided the FAA does not object, or determine the structure to be a hazard to air navigation." (*Id.* at 88A, 92A.)

In opposition to SBA Towers' and Verizon's Application, the Westmoreland County Airport Authority (Airport Authority) presented the testimony of Patrick Carney (Carney), a pilot who flies airplanes and helicopters out of the Arnold Palmer Airport. (*Id.* at 182A.) Carney stated that he believed that the proposed communications tower presented a safety concern to helicopter pilots, because helicopters fly in and out of the airport at all angles at a level 500 feet below airplanes, and the helicopter landing zone is between the runway and the location of the proposed communications tower. (*Id.* at 182A-83A.)

The Airport Authority also presented the testimony of Gabriel E. Monzo (Monzo), its executive director. (*Id.* at 189A.) Monzo testified that he has been employed by the Airport Authority for 33 years and has been its executive director for 8 years. (*Id.*) In his position, he is responsible for the day-to-day service of all air carriers, which he stated includes protecting the "approach areas and areas around the airport from obstructions." (*Id.* at 189A-90A.) Monzo explained that the Property is located in the airport overlay district in a zone classified as "part 77 surfaces" and any construction "over 150 feet high is a penetration to

part 77 surface" and, therefore, must be looked at very carefully. (*Id.* at 190A-91A.) Monzo testified that even though the FAA approved the location of the proposed communications tower and determined that there was no hazard to air navigation, he continues to have safety concerns. (*Id.* at 193A, 196A.) He explained that pilots often get into precarious situations due to weather and their experience level, and he believed that the proposed communications tower would pose as an additional hazard to these pilots. (*Id.* at 193A-94A.) Monzo stated that he is concerned not only for the individuals flying the helicopters but also those individuals on the ground that could be affected if a helicopter were to hit the proposed communications tower. (*Id.* at 200A-01A.) Monzo also explained that Life Flight and the STAT Medi-Evac utilize the rotary field, located less than 1,000 feet from the location of the proposed communications tower, and he believes that the proposed communications tower will create an issue "with helicopter traffic trying to move in that area." (*Id.* at 194A-95A.)[1]

On April 26, 2016, the ZHB rendered its decision, denying SBA Towers' and Verizon's Application. In so doing, the ZHB made the following relevant findings of fact:

> 13. The [Ordinance], in Section [118-701(L)(1),[2]] requires that proof be provided that Verizon is licensed by the [FCC] to operate a communications tower; however, the applicant's Exhibit 1E indicates that the licensing has been issued to "Cellco Partnership," not to Verizon

---

[1] Members of the public, including some of the Appellants, presented narrative testimony before the ZHB.

[2] Section 118-701(L)(1) of the Ordinance provides: "The applicant must provide proof it is licensed by the [FCC] to operate a communications tower and, if applicable, communications antennas."

Wireless. Verizon contended that Cellco Partnership is the parent company of [SBA Towers]; however, Verizon's exhibit did not verify the same.

14. Section [118-701(L)(2)] of the [Ordinance[3]] requires that Verizon comply with all standards established by the [FCC] governing human exposure to electromagnetic radiation. Other than Verizon's Exhibit 1D, which is a letter from [Rickard] of Verizon Wireless to [the Township], indicating that Verizon has complied with all FCC guidelines, there was no testimony offered by Verizon to describe the applicable standards and how the standards apply to this particular use with respect to electromagnetic radiation. Further, the Intervenors' testimony raised health and safety concerns for the residents in the area with respect to the effects of electromagnetic radiation.

15. The [Ordinance], Section [118-701(L)(3)[4]] demands that Verizon comply with all applicable [FAA] requirements and regulations, particularly since this site is located in an airport overlay district in close proximity to the Arnold Palmer Regional Airport. The applicant's Exhibit 1F is a letter from the [FAA].

16. Notwithstanding the [FAA] approval, the Arnold Palmer Regional Airport Authority, represented by its Executive Director, [Monzo], expressed concerns to the [ZHB] about airplane and helicopter safety and submitted to the [ZHB] what was marked as Airport Authority Exhibit #1, an elevation map, depicting the approximate location of the proposed [communications] tower and a letter dated February 20, 2016 from [Monzo] to the [Township] Supervisors, said letter being marked as Airport Authority Exhibit #2, expressing concerns to the Supervisors about the close proximity of a 150 foot tall

---

[3] Section 118-701(L)(2) of the Ordinance provides: "The applicant must demonstrate that the proposed communications tower and any communications antennas proposed to be mounted thereon, comply with all applicable standards established by the [FCC] governing human exposure to electromagnetic radiation."

[4] Section 118-701(L)(3) of the Ordinance provides: "Communications towers shall comply with all applicable [FAA], [PBA] and applicable airport zoning regulations."

[communications] tower to the airport and its potential detrimental effect to aviation safety in the region.

17. Testimony was offered by [Carney], who is a pilot who lives in [the Township] and flies out of the Arnold Palmer Regional Airport, both in single wing aircraft and helicopters, expressing his concerns, particularly with regard to the operation of helicopters and the type of flight path that they take in and out of the airport.

18. The [Ordinance] also requires, in Section [118-701(L)(4),[5]] that the applicant makes a good faith effort to potentially co-locate its tower on other existing communications towers, structures or buildings in the area and that the applicant has made a reasonable search of the area within one quarter mile of the proposed [communications] tower site concerning the same. Testimony was taken from Verizon's witness, [Stark], of Wireless, Inc., which was a company contracted by Verizon to help with the co-location issue. [Stark] indicated that he had surveyed the area and was aware that Verizon had previously attempted to place antenna[s] on the Latrobe Area High School, but was denied that permission by the [ZHB]. He also suggested that he looked at other sites in close proximity to the proposed site, that being a water tower, a hotel, and radio towers. [Stark], however, admitted that although he did in fact identify sites for Verizon and communicated them to Verizon, it was Verizon not Stark who would ultimately have done the analysis of the potential coverage by these sites and the evaluation necessary to determine whether co-location or location on an existing structure was possible.

---

[5] Section 118-701(L)(4) of the Ordinance provides, in relevant part:

Any applicant proposing construction of a new communications tower shall demonstrate that a good faith effort has been made to obtain permission to mount the communications antennas on an existing building, structure or communications tower. A good faith effort shall require that all owners of potentially suitable structures within a radius of 1/4 mile of the proposed communications tower site be contacted.

8

19. [Patel], Verizon's radio frequency engineer, indicated that he had examined sites more than one-fourth of a mile from the proposed site owned by [Columbus]; however, even though [Patel] described what has been labeled as Verizon's Exhibit 1G, network coverage maps and propagation studies, it remained unclear as to exactly what actual investigation [Patel] had done with respect to sites that included an existing water tower and radio towers in the area.

20. Intervenor, Christopher Schmauch, testified and indicated to the [ZHB] through his Exhibit A, that he had examined Verizon's coverage areas through Verizon's own internet website and had concluded from that information that Verizon's existing coverage area does not show a gap in coverage in this particular area of the Township. Through Mr. Schmauch, the Intervenors also introduced their Exhibit B, a satellite map indicating the location of the proposed [communications] tower and the Intervenors' Exhibit C, which is a petition signed by numerous property owners in the immediate area opposed to the erection of the [communications] tower and indicating the detrimental effect it would have on the residents.

(ZHB Decision at 4-7 (footnotes added).) Based on those findings of fact, the ZHB made the following relevant conclusions of law:

3. Although Verizon submitted exhibits, documentation and testimony that has satisfied many of the requirements of Section [118-701(L)], in particular those requirements relating to the site plan, the fencing and screening of the [P]roperty, the access to the [P]roperty, the insurance requirements, construction details, support wires, etc., the [ZHB] concludes that the remaining requirements of the Ordinance, including Section [118-701(L) (1), (2), (3), (4) and (8)], have not been established by Verizon to the [ZHB's] satisfaction.

4. One of the key elements for the [ZHB's] consideration with respect to granting a privilege to construct a communications tower in an R-1 zone, is the evidence to support the contention that a 150 foot [communications] tower would be the minimum height

9

necessary to fill the gap in coverage that Verizon asserts (Section [118-701(L)(8)]), and the "good faith effort" that Verizon would have made to evaluate other structures, buildings or other communications towers in an effort to co-locate antenna[s] or a [communications] tower at another site. The [ZHB] concludes that [Patel's] testimony concerning co-location, coupled with [Stark's] testimony as to his role in identifying alternative sites, not evaluating them, give the [ZHB] reason to reject Verizon's testimony on its "good faith effort" in this regard. The [ZHB] concludes that a good faith effort was not made with respect to the requirements of Section [118-701(L)(4)] and that evidence was not forthcoming detailing how alternative sites were evaluated within a one quarter mile radius of the proposed site, or within a one mile radius of the proposed site, as [Patel], Verizon's expert, was suggesting. [Patel's] testimony was inconsistent and somewhat confusing on this issue.

5. Although the [ZHB] understands the position of the [FAA] with regard to the proposed location of the communications tower, the [ZHB] also finds that the testimony offered by [Monzo], the Executive Director of the Arnold Palmer Regional Airport [sic], was credible and gave the [ZHB] concern about the safety of not only single wing aircraft and helicopters and their occupants accessing the airport, but of course, a concern about public safety on the ground in the immediate vicinity with respect to this air traffic. The [ZHB] recognizes [Monzo's] expertise in airport safety and control in the [Township] area because of his lengthy tenure of service to the airport and the Township and his well respected standing in the local community with respect to all aspects of airport operations.

6. That the [ZHB] evaluated Verizon's Exhibit 1D, concerning the standards of the FCC regarding human exposure to electromagnetic radiation from communications towers; however, the [ZHB] concludes that Exhibit 1D does not provide the detail or supporting data which would satisfy the [ZHB] as to the health and safety of its citizens concerning exposure to electromagnetic radiation, all of which is required by Section [118-701(L)(2)] of the Ordinance and referenced

10

in Section [118-701(L)(4)(d)] of the Ordinance in co-location situations.

7. Further, the [ZHB] has examined Section 107 of the Pennsylvania Municipalities Planning Code [(MPC)[6]] concerning standing in matters of zoning applications. As contended by the Intervenors, the [ZHB] agrees that Verizon in this instance is not a landowner as defined in the [MPC,[7]] that being a "legal or beneficial owner or owners of land, including the holder of an option or contract to purchase . . . , a lessee, if he is authorized under the lease to exercise the rights of the landowner, or other person having a proprietary interest in the land." With respect to the [ZHB's] examination of Verizon's Exhibit 1C, the [ZHB] concludes that the landowner herein is [Columbus], not Verizon or [SBA Towers] and that the [ZHB] agrees with Intervenors that Verizon would have had a right to exercise an option to lease the premises; however, there was no testimony establishing that Verizon had actually leased the premises. The [ZHB] concludes that Verizon, in the capacity of a proposed leaseholder, is not a proper party and therefore does not have standing before the [ZHB.]

---

[6] Act of July 31, 1968, P.L. 805, *as amended*, 53 P.S. § 10107. Section 107 of the MPC provides, in relevant part:

(a) The following words and phrases when used in this act shall have the meanings given to them in this subsection unless the context clearly indicates otherwise:

. . . .

"Applicant," a landowner or developer, as hereinafter defined, who has filed an application for development including his heirs, successors and assigns.

. . . .

"Landowner," the legal or beneficial owner or owners of land including the holder of an option or contract to purchase (whether or not such option or contract is subject to any condition), a lessee if he is authorized under the lease to exercise the rights of the landowner, or other person having a proprietary interest in land.

[7] Act of July 31, 1968, P.L. 805, *as amended*, 53 P.S. §§ 10101-11202.

8. The [ZHB] is charged as a quasi judicial body with evaluating the credibility of all witnesses and rendering its findings and conclusions based on its evaluation of the testimony and exhibits presented to it. With respect to that evaluation, the [ZHB] has concluded that Verizon has failed to adequately satisfy the burden upon it to secure a special exception in this R-1 zoning district.

(ZHB Decision at 7-10 (footnotes added) (omission in original).)

SBA Towers appealed the ZHB's decision to Common Pleas, and Common Pleas permitted Appellants and Verizon to intervene.[8] Thereafter, Common Pleas, *sua sponte*, scheduled a hearing on October 21, 2016, "for the purpose of giving the parties an opportunity to present testimony and/or any other additional evidence establishing the relationship between 'Cellco Partnership,' 'Verizon Wireless,' and 'Pittsburgh SMSA Limited Partnership d/b/a Verizon Wireless.'" (Certified Record (C.R.), Common Pleas Order dated Sept. 12, 2016.) In so doing, Common Pleas noted that it had reviewed the record and briefs and found

that the record [was] insufficient with respect to the issue concerning the [ZHB's] Finding of Fact 13, which note[d] that the [FCC] license is issued to "Cellco Partnership," rather than to "Verizon Wireless," and as relating to Section [118-701(L)(1)] of the Ordinance, which requires that proof be provided that Verizon Wireless is licensed by the [FCC] to operate a communications tower.

(C.R., Common Pleas Order dated Sept. 12, 2016.) By opinion and order dated October 27, 2016, Common Pleas reversed the ZHB's decision, thereby sustaining SBA Towers' appeal. In so doing, Common Pleas made numerous conclusions

---

[8] Common Pleas also permitted the Airport Authority to intervene. Unity Township intervened by filing a notice of intervention.

12

relevant to this appeal. First, with respect to the FCC licensure requirement as set forth in Section 118-701(L)(1) of the Ordinance, Common Pleas explained:

> Cellco Partnership is the parent company of Verizon Wireless, and Cellco is more commonly and popularly referred to as Verizon Wireless. As such, Verizon Wireless, under the Cellco name, is licensed by the FCC.

(Common Pleas Op. at 6.) Second, with respect to the requirement that SBA Towers and Verizon demonstrate that they made a good faith effort to identify other structures as potential collocation sites as set forth in Section 118-701(L)(4) of the Ordinance, Common Pleas stated:

> [T]here is not substantial evidence in the record to support the [ZHB's] finding that [the] applicant did not make a good faith effort to identify other structures as possible collocation sites within a quarter mile radius of the proposed site. To the contrary, [SBA Towers'] witnesses conducted a comprehensive review of the area and the possibilities available, thereby demonstrating their good faith effort at finding the best available location. We find that the [ZHB] abused its discretion when it found otherwise.

(Common Pleas Op. at 7.) Third, with respect to the requirement that the proposed communications tower comply with FAA, PBA, and other applicable airport zoning regulations as set forth in Section 118-701(L)(3) of the Ordinance, Common Pleas indicated:

> [T]here is not substantial evidence in the record to support the [ZHB's] finding that the testimony of [Monzo], Executive Director of the Arnold Palmer Regional Airport, concerning the potential safety hazards posed by the proposed tower deserved more weight than the evaluation done and conclusion reached by the [FAA]. We find that the [ZHB] abused its discretion when it found otherwise.

(Common Pleas Op. at 9.) Fourth, with respect to the requirement that SBA Towers and Verizon demonstrate that the proposed communications tower complies with

13

FCC regulations relating to human exposure to electromagnetic radiation as set forth in Section 118-701(L)(2) of the Ordinance, Common Pleas explained:

> [B]ased upon the evidence presented that establishes the [a]pplicant's FCC compliance, we find that substantial evidence supports a finding that human exposure to electromagnetic radiation from the proposed telecommunications tower is not a health and safety concern in this case. For the [ZHB] to find otherwise was an abuse of discretion.

(Common Pleas Op. at 10.) Lastly, with respect to the issue of whether SBA Towers had standing to file the Application with the ZHB, Common Pleas stated:

> [I]n light of [the Option Agreement] and the controlling case law, we find that substantial evidence supports a finding that [SBA Towers] has standing as an applicant under the MPC to seek this special exception. For the [ZHB] to find otherwise was an abuse of discretion.

(Common Pleas Op. at 12.)[9] Appellants appealed Common Pleas' decision to this Court.

## II. ISSUES ON APPEAL

On appeal,[10] Appellants present the following issues for our consideration:[11] (1) whether SBA Towers had standing to file the Application with

---

[9] In its opinion, Common Pleas did not specifically address the ZHB's determination that SBA Towers and Verizon failed to demonstrate compliance with the minimum height requirement set forth in Section 118-701(L)(8) of the Ordinance. Common Pleas did, however, reverse the ZHB's decision, and, therefore, it is implied that Common Pleas concluded that SBA Towers and Verizon had demonstrated compliance with that requirement.

[10] "Where a trial court takes no additional evidence in an appeal from a decision of the [ZHB], this Court is limited to considering whether the [ZHB] erred as a matter of law or abused its discretion." *German v. Zoning Bd. of Adjustment*, 41 A.3d 947, 949 n.1 (Pa. Cmwlth. 2012). "A [ZHB] abuses its discretion if its findings are not supported by substantial evidence." *Arter v. Phila. Zoning Bd. of Adjustment*, 916 A.2d 1222, 1226 n.9 (Pa. Cmwlth.), *appeal denied*, 934 A.2d 75 (Pa. 2007).

[11] The ZHB and the Township adopted and joined in Appellants' brief.

14

the ZHB; (2) whether Common Pleas committed an error of law by permitting Verizon to intervene in the statutory appeal; (3) whether Common Pleas committed an error of law and/or abused its discretion by conducting an evidentiary hearing, *sua sponte*, to clarify the relationship between SBA Towers and/or Verizon and Cellco Partnership, the entity identified on the FCC license; (4) whether Common Pleas erred in concluding that the ZHB improperly determined that SBA Towers and Verizon failed to demonstrate a good faith effort to locate other structures as possible collocation sites within a quarter mile of the Property; (5) whether Common Pleas erred in concluding that the ZHB improperly determined that SBA Towers and Verizon failed to provide evidence that SBA Towers and Verizon were licensed by the FCC to operate communications towers and antennas; (6) whether Common Pleas erred in concluding that the ZHB improperly determined that SBA Towers and Verizon failed to demonstrate that the proposed communications tower and communications antennas complied with all applicable standards established by the FCC governing human exposure to electromagnetic radiation; (7) whether Common Pleas erred in concluding that the ZHB improperly determined that SBA Towers and Verizon failed to demonstrate that a 150-foot communications tower is the minimum height necessary to serve Verizon's need; and (8) whether Common Pleas erred by reweighing the evidence before the ZHB related to airport safety.

## III. DISCUSSION

### A. Standing

Appellants argue that SBA Towers lacked standing to file the Application with the ZHB. More specifically, Appellants argue that SBA Towers is not a "landowner," as that term is defined by Section 107 of the MPC. Appellants argue further that the Option Agreement does not confer a present interest in the

15

Property to SBA Towers. In response, SBA Towers and Verizon argue that SBA Towers had standing to file the Application because pursuant to *Tioga Preservation Group v. Tioga County Planning Commission*, 970 A.2d 1200 (Pa. Cmwlth.), *appeal denied*, 982 A.2d 1229 (Pa. 2009), the holder of an option contract is an applicant under Section 107 of the MPC if such holder is authorized to exercise the rights of the landowner. SBA Towers and Verizon argue further that the Option Agreement "explicitly grants [SBA Towers] permission to exercise the rights of the landowner," because SBA Towers is authorized to obtain the necessary governmental approvals for the construction of the proposed communications tower. (SBA Towers' and Verizon's Br. at 16-17.)

Section 107 of the MPC defines "applicant" as "a landowner or developer . . . who has filed an application for development" and a "landowner" as "the legal or beneficial owner or owners of land including the holder of an option or contract to purchase[,] . . . a lessee if he is authorized under the lease to exercise the rights of the landowner, or other person having a proprietary interest in land." In *Tioga Preservation Group*, this Court considered, *inter alia*, whether a lease option agreement conferred a property interest sufficient to make the holder of the option an applicant/landowner under the MPC. *Tioga Preservation Group*, 970 A.2d at 1203-04. The lease option agreement at issue in *Tioga Preservation Group* granted the holder of the option "an exclusive easement during the option period, allowing [it] to enter the property to perform various studies to determine the suitability of the property for the [p]roject." *Id.* at 1204. Based on the language of the lease option agreement, this Court held that the holder of the option was a proper applicant under the MPC. *Id.* In so doing, this Court stated that "[i]t is clear from the terms of the [lease o]ption [a]greement that the owners of the subject properties

16

have granted [the holder of the option] an interest beyond that of a 'proposed leaseholder' and have conferred upon [the holder of the option] a proprietary interest in the subject properties." *Id.*

While the Option Agreement in this case does not specifically provide SBA Towers with an "exclusive easement," the Option Agreement does grant SBA Towers "the right to enter the [Property] to conduct tests and studies . . . to determine the suitability of the [Property] for [SBA Towers'] intended use." (R.R. at 70A.) The Option Agreement also requires SBA Towers to "obtain any necessary governmental licenses or authorizations required for the construction and use of" the proposed communications tower. (*Id*. at 71A.) This language makes it clear that SBA Towers is more than just a potential leaseholder; the Option Agreement specifically authorizes SBA Towers to exercise Columbus's rights as the owner of the Property. For these reasons, SBA Towers is a landowner and a proper applicant under Section 107 of the MPC and, thus, had standing to file the Application with the ZHB. Common Pleas, therefore, properly concluded that the ZHB abused its discretion in finding that SBA Towers lacked standing to file the Application with the ZHB.

## B. Verizon's Intervention

Appellants argue that Common Pleas committed an error of law by permitting Verizon to intervene in the statutory appeal. More specifically, Appellants argue that Verizon could not intervene as a matter of course under

17

Section 1004-A of the MPC[12] because Verizon is not an owner or tenant of the Property or a party to the Option Agreement.  Appellants argue further that Verizon should also not have been permitted to intervene under Pennsylvania Rule of Civil Procedure No. 2327[13] because (a) Common Pleas did not conduct a hearing to determine whether Verizon could establish the criteria necessary to intervene as required by Pennsylvania Rule of Civil Procedure No. 2329,[14] and (b) Verizon did not allege facts sufficient to establish a basis to intervene in its petition.  In response, SBA Towers and Verizon concede that Verizon is not an owner or tenant of the

---

[12] Section 1004-A of the MPC provides:

Within the 30 days first following the filing of a land use appeal, if the appeal is from a board or agency of a municipality, the municipality and any owner or tenant of property directly involved in the action appealed from may intervene as of course by filing a notice of intervention, accompanied by proof of service of the same, upon each appellant or each appellant's counsel of record. All other intervention shall be governed by the Pennsylvania Rules of Civil Procedure.

[13] Pennsylvania Rule of Civil Procedure No. 2327 provides:

At any time during the pendency of an action, a person not a party thereto shall be permitted to intervene therein, subject to these rules if

(1) the entry of judgment in such action or the satisfaction of such judgment will impose any liability upon such person to indemnify in whole or in part the party against whom judgment may be entered; or

(2) such person is so situated as to be adversely affected by a distribution or other disposition of property in the custody of the court or of an officer thereof; or

(3) such person could have joined as an original party in the action or could have been joined therein; or

(4) the determination of such action may affect any legally enforceable interest of such person whether or not such person may be bound by a judgment in the action.

[14] Pennsylvania Rule of Civil Procedure No. 2329 provides, in relevant part:

Upon the filing of the petition [to intervene] and after hearing, of which due notice shall be given to all parties, the court, if the allegations of the petition have been established and are found to be sufficient, shall enter an order allowing intervention[.]

18

Property, but argue that Common Pleas properly permitted Verizon to intervene under Pennsylvania Rule of Civil Procedure No. 2327. More specifically, SBA Towers and Verizon argue that it is "indisputable that Verizon is situated to be adversely affected by the disposition of the appeal" because SBA Towers' communications tower "is designed specifically to fill an existing gap in Verizon's wireless network." (SBA Towers' and Verizon's Br. at 18.)

While Common Pleas did not hold a hearing to specifically consider whether Verizon should be permitted to intervene as required by Pennsylvania Rule of Civil Procedure No. 2329, the record provides an adequate basis upon which Common Pleas could exercise its discretion to permit Verizon to intervene in the matter. *See Sunny Farms, Ltd. v. N. Codorus Twp.*, 474 A.2d 56, 62 (Pa. Cmwlth. 1984) ("Although a hearing would have been preferable, . . . the record here provided an adequate basis upon which the court exercised its discretion to allow the intervention."). The record in this case establishes that SBA Towers intends to construct the communications tower on the Property specifically for Verizon so that Verizon can collocate its antennas to fill an existing gap in its coverage. Thus, Verizon was "situated as to be adversely affected" by Common Pleas' decision regarding whether to sustain SBA Towers' appeal and permit SBA Towers to construct the proposed communications tower on the Property. *See* Pa. R.C.P. No. 2327(2). For these reasons, Common Pleas did not commit an error of law by permitting Verizon to intervene in the statutory appeal.

### C. *Sua Sponte* Hearing

Appellants contend that Common Pleas committed an error of law and/or abused its discretion by conducting an evidentiary hearing, *sua sponte*, to clarify the relationship between SBA Towers and/or Verizon and Cellco Partnership,

19

the entity identified on the FCC license.[15]  More specifically, Appellants argue that Common Pleas violated Section 1005-A of the MPC[16] by scheduling a hearing when no party filed a motion to present additional evidence.  Appellants argue further that Common Pleas should have decided the appeal based solely on the underlying record and should not have "created a new record to clean up or 'clarify' the deficient record created by SBA [Towers] and Verizon before the ZHB."  (Appellants' Br. at 23, 26.)  In response, SBA Towers and Verizon argue that Common Pleas did not commit an error of law or abuse its discretion because Common Pleas has discretion to decide whether to request additional evidence.  SBA Towers and Verizon argue further that Common Pleas did not err because it scheduled the "*sua sponte* hearing to clarify Verizon's ownership interest in the various entities" and only "requested non-substantive testimony relating to the business relationship between Verizon and its entities."  (SBA Towers' and Verizon's Br. at 21.)

---

[15] We note that Appellants objected at the outset of the hearing, contending that Common Pleas could not *sua sponte* conduct an evidentiary hearing.  Common Pleas overruled the objection, asserting it was merely seeking clarification.  (R.R. at 325A-27A.)

[16] Section 1005-A of the MPC provides:

> If, upon motion, it is shown that proper consideration of the land use appeal requires the presentation of additional evidence, a judge of the court may hold a hearing to receive additional evidence, may remand the case to the body, agency or officer whose decision or order has been brought up for review, or may refer the case to a referee to receive additional evidence . . . .  If the record below includes findings of fact made by the governing body, board or agency whose decision or action is brought up for review and the court does not take additional evidence or appoint a referee to take additional evidence, the findings of the governing body, board or agency shall not be disturbed by the court if supported by substantial evidence.  If the record does not include findings of fact or if additional evidence is taken by the court or by a referee, the court shall make its own findings of fact based on the record below as supplemented by the additional evidence, if any.

20

Section 1005-A of the MPC permits the trial court to hold a hearing to take additional evidence *upon motion*. While it is within the trial court's discretion to decide whether to take any additional evidence, such discretion is exercised only after one party files a motion. *See, e.g.*, *Wilson v. Plumstead Twp. Zoning Hearing Bd.*, 894 A.2d 845 (Pa. Cmwlth. 2006), *aff'd*, 936 A.2d 1061 (Pa. 2007); *Caln Nether Co., L.P. v. Bd. of Supervisors of Thornbury Twp.*, 840 A.2d 484 (Pa. Cmwlth.), *appeal denied*, 856 A.2d 835 (Pa. 2004). In this case, Common Pleas scheduled and held a hearing *sua sponte* to consider additional evidence regarding the relationship between SBA Towers and/or Verizon and Cellco Partnership. Because none of the parties filed a motion to present additional evidence on this issue, Common Pleas committed an error of law by scheduling and holding the hearing. We can, however, mitigate the error on appeal by disregarding the evidence presented at the hearing.

## D. Collocation

Appellants argue that Common Pleas erred in concluding that the ZHB improperly determined that SBA Towers and Verizon failed to demonstrate a good faith effort to identify other structures as possible collocation sites within a quarter mile of the Property. More specifically, Appellants argue that Common Pleas substituted its judgment for that of the ZHB and erroneously determined that existing radio towers were beyond a quarter-mile[17] radius of the Property because "the undisputed evidence before the ZHB showed that the radio tower structures are located within 1,000 feet of the proposed tower site." (Appellants' Br. at 27 (footnote omitted).) Appellants argue further that SBA Towers and Verizon cannot establish that they considered the radio towers in "good faith" as required by Section 118-701(L)(4) of the Ordinance, because the undisputed testimony

---

[17] A quarter mile equals 1,320 feet.

21

demonstrates that SBA Towers and Verizon did not contact the owners of the radio towers or otherwise evaluate the suitability of collocating the antennas on the radio towers. Appellants also argue that Common Pleas erroneously placed the burden of proof on Appellants when Common Pleas concluded that Appellants did not present any reliable evidence from technical professionals to support their suggestions that certain alternative sites were suitable to fill Verizon's coverage gap. In response, SBA Towers and Verizon counter that Common Pleas correctly determined that the ZHB abused its discretion as to its findings regarding SBA Towers' and Verizon's efforts to identify alternate collocation structures. More specifically, SBA Towers and Verizon argue that the water tower, hotel, and radio towers are located outside the quarter-mile radius of the Property and "were considered and dismissed as possible collocation opportunities given the distance from the gap in coverage and overall height of the structures." (SBA Towers' and Verizon's Br. at 22.)

Section 118-701(L)(4) of the Ordinance required SBA Towers and Verizon to demonstrate that they made a good faith effort to obtain permission to mount their antennas on an existing building, structure, or communications tower located within a quarter mile radius of the Property. While Appellants argue that the undisputed evidence before the ZHB demonstrated that certain radio tower structures were located within 1,000 feet of the Property, Appellants have not cited any evidence in the record to support their statement. The citations to the record provided by Appellants in their brief as "indisputable proof" that the radio towers are located within 1,000 feet of the Property are merely cross-examination questions framed by Appellants' attorney and the Airport Authority's attorney and directed to SBA Towers' and Verizon's witnesses. No witness stated on the record that existing radio towers were, in fact, located within 1,000 feet of the Property. For these

22

reasons, we agree with Common Pleas that the ZHB improperly determined that SBA Towers and Verizon failed to demonstrate a good faith effort to identify other structures as possible collocation sites within a quarter mile of the Property.

### E. FCC License

Appellants argue that Common Pleas erred in concluding that the ZHB improperly determined that SBA Towers and Verizon failed to provide evidence that SBA Towers and Verizon were licensed by the FCC to operate communications towers and antennas. More specifically, Appellants argue that the evidence presented to the ZHB to show that SBA Towers and Verizon are licensed by the FCC consisted of "copies of [four] FCC 'Radio Station Authorizations' issued to 'Cellco Partnership,'" and that, despite the insistence of SBA Towers' and Verizon's attorney that Cellco Partnership is the parent company of SBA Towers and Verizon, the evidence submitted to the ZHB did not substantiate his representation. (Appellants' Br. at 31.) In response, SBA Towers and Verizon argue that Common Pleas did not err because Verizon provided evidence that it is licensed by the FCC.[18]

Section 118-701(L)(1) of the Ordinance required SBA Towers and Verizon to provide proof that the applicant was licensed by the FCC to operate a communications tower and communications antennas. The documents attached to the Application indicate that the FCC issued licenses to Cellco Partnership, not SBA Towers or Verizon. While SBA Towers' and Verizon's attorney stated on the record before the ZHB that Cellco Partnership is the parent company and Verizon is the affiliate, there was no evidence or testimony entered into evidence to establish this

---

[18] Both parties also advanced arguments relative to the additional evidence that Common Pleas received at the time of the *sua sponte* hearing. Based on our conclusion above that Common Pleas committed an error of law by taking additional evidence relative to the relationship between SBA Towers and/or Verizon and Cellco Partnership, we must ignore all evidence presented at the time of the *sua sponte* hearing.

23

relationship. In addition, the ZHB determined that SBA Towers and Verizon were not proper applicants under Section 107 of the MPC and, therefore, did not have standing to file the Application. While SBA Towers appealed the ZHB's decision, the ZHB's decision with respect to Verizon went unchallenged.[19] Thus, the question is not whether Verizon is licensed by the FCC, but whether SBA Towers, the applicant, is licensed by the FCC. There is no evidence of record to even suggest that SBA Towers may be licensed by the FCC. For these reasons, the ZHB properly determined that SBA Towers and Verizon failed to provide evidence that SBA Towers and Verizon were licensed by the FCC to operate communications towers and antennas.

## F. FCC Standards

Appellants argue that Common Pleas erred in concluding that the ZHB improperly determined that SBA Towers and Verizon failed to demonstrate that the proposed communications tower and communications antennas complied with all applicable standards established by the FCC governing human exposure to electromagnetic radiation. More specifically, Appellants argue that the only evidence submitted into the record to establish that the proposed communications tower will comply with FCC standards governing human exposure to electromagnetic radiation is a hearsay letter from Rickard to the Township. Appellants argue further that such letter does not "demonstrate how the proposed [communications] tower and antenna[s] will comply with the applicable FCC standards" and "offers nothing more than a bald statement that [the proposed

---

[19] Even though the validity of Section 118-701(L)(1) of the Ordinance is not before us, we note that the ZHB's unchallenged conclusion that Verizon was not a proper applicant under Section 107 of the MPC raises substantial questions regarding how and under what circumstances an applicant could comply with Section 118-701(L)(1) of the Ordinance.

24

communications tower] will be compliant with FCC [g]uidelines." (Appellants' Br. at 34.) In response, SBA Towers and Verizon argue that Common Pleas correctly determined that the proposed communications tower and antennas would comply with FCC standards because Rickard's letter certified that the proposed site would be compliant with all FCC regulations and Patel testified that Verizon is in compliance with all FCC regulations. SBA Towers and Verizon argue further that the neighboring "residents' generalized and unsubstantiated fears cannot be permitted to preempt Verizon's compliance with FCC regulations." (SBA Towers' and Verizon's Br. at 26.)

Section 118-701(L)(2) of the Ordinance required SBA Towers and Verizon to demonstrate that the proposed communications tower and any communications antennas proposed to be mounted thereon complied with all applicable FCC standards relating to human exposure to electromagnetic radiation. The only evidence submitted into the record to establish that the proposed communications tower will comply with FCC standards governing human exposure to electromagnetic radiation is Rickard's letter, which provides that Verizon "performed a radio frequency (RF) compliance pre-construction evaluation" and that based on such evaluation the proposed communications tower will be in compliance with FCC guidelines. (R.R. at 81A.) The ZHB concluded that Rickard's letter was too conclusory and did not provide sufficient detail or data to satisfy the ZHB as to the health and safety of its citizens concerning exposure to electromagnetic radiation. This was not an error.

This Court's recent unreported decision in *TowerCo 2013 LLC v. Cecil Township Board of Supervisors* (Pa. Cmwlth., No. 239 C.D. 2017, filed

December 8, 2017),[20] is persuasive in this matter. In *TowerCo*, the applicant sought to construct a communications tower for Verizon in a residential zoning district, where communications towers were permitted as a conditional use. *TowerCo*, slip. op. at 1-2. In order to obtain conditional use approval, the township's ordinance required the applicant to demonstrate, *inter alia*, that the proposed communications tower complied with the FCC's safety standards and electromagnetic field limits. *Id.* at 8. To satisfy this requirement, the applicant submitted a letter from Rickard, which letter contained language similar to the letter submitted to the ZHB in this case. *Id.* The board of supervisors in *TowerCo* determined that the letter was insufficient to meet the applicant's burden of proof under the township's ordinance. *Id.* at 9. On appeal, this Court concluded that the letter was "conclusory and not verified or supported by any other documentation[, and, therefore, t]he [b]oard did not err in determining that [the applicant's] evidence of compliance with FCC standards was insufficient." *Id.*

Here, like in *TowerCo*, Rickard's letter is conclusory and not supported by other documentation. While we find it unlikely that Verizon would risk its FCC licenses by constructing and/or operating a communications tower that would expose the public to harmful levels of electromagnetic radiation, SBA Towers and Verizon could have easily satisfied the ZHB's concerns by providing the ZHB with the actual written evaluation. We note, however, that it is the FCC, not the ZHB, that determines whether the proposed communications tower will comply with FCC standards. Therefore, while the ZHB may require that the actual written evaluation be entered into evidence, it may not require any extraordinary level of detail

---

[20] Pursuant to Commonwealth Court Internal Operating Procedure 414(a), "an unreported panel decision of this [C]ourt issued after January 15, 2008, [may be cited] for its persuasive value, but not as binding precedent."

26

regarding how the proposed communications tower will comply with FCC standards. For these reasons, Common Pleas erred in concluding that the ZHB improperly determined that SBA Towers and Verizon failed to demonstrate that the proposed communications tower and communications antennas complied with all applicable standards established by the FCC governing human exposure to electromagnetic radiation.

## G. Minimum Height Necessary

Appellants argue that Common Pleas erred in concluding that the ZHB improperly determined that SBA Towers and Verizon failed to demonstrate that a 150-foot communications tower is the minimum height necessary to serve Verizon's need. More specifically, Appellants argue that there is substantial evidence to support the ZHB's finding that SBA Towers and Verizon failed to establish that a 150-foot communications tower is the minimum height necessary to fill Verizon's coverage gap because Patel testified that a 95-foot tower "will improve [Verizon's] coverage in the target area" and a map from Verizon's website "showed that there is no gap in coverage in this particular area of the Township." (Appellants' Br. at 35.) In response, SBA Towers and Verizon argue that Common Pleas did not err by determining that a 150-foot communications tower is the minimum height necessary because "Patel provided uncontroverted expert testimony that collocating antennas at the 95-foot mark on the proposed [communications] tower significantly diminishes Verizon's ability to fill the existing gap in coverage by approximately [50] percent" and that "collocating Verizon's antennas at a centerline height of 145 feet on the proposed 150-foot communications tower is the minimum height necessary to fill the existing gap in coverage." (SBA Towers' and Verizon's Br. at 27.)

Section 118-701(L)(8) of the Ordinance[21] required SBA Towers and Verizon to demonstrate that the proposed communications tower would be the minimum height necessary to perform its function. The stated function of the proposed communications tower in this matter is to fill an existing gap in Verizon's wireless coverage.[22] Patel testified that placing the antenna at 145 feet on a 150-foot communications tower was the minimum height necessary to fill Verizon's gap in coverage and that placing the antennas at the 95-foot mark would diminish Verizon's ability to fill the gap in coverage by 50 percent. This testimony establishes that a 150-foot communications tower is the minimum height necessary to fill the existing gap in Verizon's coverage in the Township. As a result, we agree with Common Pleas that the ZHB improperly determined that SBA Towers and Verizon failed to demonstrate that a 150-foot communications tower is the minimum height necessary to serve Verizon's need.

## H. Airport Safety

Appellants argue that Common Pleas erred by reweighing the evidence before the ZHB related to airport safety. More specifically, Appellants take issue with Common Pleas' conclusion that there was not substantial evidence in the record

---

[21] Section 118-701(L)(8) of the Ordinance provides: "The applicant shall demonstrate that the proposed height of the communications tower is the minimum height necessary to perform its function."

[22] Appellants seem to suggest that there is a question regarding whether Verizon even has an existing gap in its coverage within the Township, because "the ZHB was persuaded by a map from Verizon's own website [that] showed that there is no gap in coverage in this particular area of the Township." (Appellants' Br. at 35.) Appellants, however, mischaracterize the weight given by the ZHB to this evidence. The ZHB simply stated that Appellant Christopher Schmauch "testified and indicated to the [ZHB] through his Exhibit A, that he had examined Verizon's coverage areas through Verizon's own internet website and had concluded from that information that Verizon's existing coverage area does not show a gap in coverage in this particular area of the Township." (ZHB Decision at 6.) The ZHB did not make a specific finding or conclusion that Verizon failed to demonstrate an existing gap in its coverage in the Township.

28

to support the ZHB's finding that Monzo's and Carney's testimony deserved more weight than the evaluation performed and conclusion reached by the FAA regarding airport safety. Appellants argue further that Monzo's and Carney's credible testimony provides substantial evidence that the proposed communications tower will have an adverse impact on public health, safety, and welfare. In response, SBA Towers and Verizon argue that Common Pleas did not err in determining that the ZHB had abused its discretion by concluding that SBA Towers and Verizon had failed to comply with Section 118-701(L)(3) of the Ordinance. More specifically, SBA Towers and Verizon argue that "the FAA preempts relevant safety regulations and establishes a complete safety standard for air transportation which are *not* subject to variation among jurisdictions" and they provided the ZHB with a copy of the FAA approval for the proposed communications tower. (SBA Towers' and Verizon's Br. at 29 (emphasis in original).)

Appellants incorrectly frame their argument in the context of adverse impact on public health, safety, and welfare. The ZHB relied on Monzo's and Carney's testimony not to conclude that the proposed communications tower would have an adverse impact on public health, safety, and welfare, but rather to conclude that SBA Towers and Verizon failed to demonstrate that the proposed communications tower complies with all applicable FAA and PBA regulations as required by Section 118-701(L)(3) of the Ordinance. In order to comply with Section 118-701(L)(3) of the Ordinance, SBA Towers and Verizon submitted into evidence a letter from the FAA indicating that the FAA had conducted an aeronautical study and determined that the proposed communications tower did "not exceed obstruction standards and would not be a hazard to air navigation." (R.R. at 88A.) SBA Towers and Verizon also submitted into evidence a statement

29

from the PBA, indicating that the PBA had no objection to the proposed communications tower "provided the FAA does not object, or determine the structure to be a hazard to air navigation." (*Id.* at 92A.) The analysis stops here, as the FAA and PBA letters establish that the proposed communications tower complies with their regulations as required by Section 118-701(L)(3) of the Ordinance. We, therefore, agree with Common Pleas that the ZHB abused its discretion by determining that SBA Towers and Verizon failed to comply with Section 118-701(L)(3) of the Ordinance. Moreover, Common Pleas did not reweigh the evidence before the ZHB related to airport safety.

## IV. CONCLUSION

Based on the foregoing, Common Pleas' order is reversed.

<br>

P. KEVIN BROBSON, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

SBA Towers IX, LLC and Pittsburgh   :
SMSA Limited Partnership d/b/a   :
Verizon Wireless   :
  :
      v.   :   No. 1884 C.D. 2016
  :
Unity Township Zoning Hearing Board   :
and Dr. Chris and Jill Bellicini;   :
James and Megan McIntosh; Edward   :
and Kathy Sobota; and Christopher and   :
Lynn Schmauch and Westmoreland   :
County Airport Authority   :
  :
Appeal of: Dr. Chris and Jill Bellicini,   :
James and Megan McIntosh,   :
Edward and Kathy Sobota,   :
and Christopher and Lynn Schmauch   :

# **O R D E R**

AND NOW, this 16th day of February, 2018, the order of the Court of Common Pleas of Westmoreland County is hereby REVERSED.

_____
P. KEVIN BROBSON, Judge