## MONROE MEADOWS HOUSING PARTNERSHIP, LP

v.

## MUNICIPAL COUNCIL OF THE MUNICIPALITY OF MONROEVILLE,

**Appeal of: Municipality of Monroeville.**

Commonwealth Court of Pennsylvania.

Argued Oct. 16, 2006.

Decided Feb. 28, 2007.

Publication Ordered June 5, 2007.

Craig H. Alexander, Pittsburgh, for appellant.

Clifford B. Levine, Pittsburgh, for appellee, Monroe Meadows Housing Partnership, L.P.

BEFORE: PELLEGRINI, Judge, SIMPSON, Judge, and KELLEY, Senior Judge.

OPINION BY Senior Judge KELLEY.

The Municipal Council of the Municipality of Monroeville (Council) appeals from an order of the Court of Common Pleas of Allegheny County (Trial Court) that reversed Council's decisions dated March 10, 2005, and May 8, 2005. The Trial Court's order thereby granted the land development modification/hardship request of Monroe Meadows Housing Partnership, L.P. (Partnership), and further directed Council to accept Rolling Fields Lane as a dedicated public street within the Municipality of Monroeville (Monroeville) subject to certain additional construction and certification requirements. We affirm.

The Partnership is the developer of an already-built housing development within Monroeville named Monroe Meadows. At its November 9, 2000 meeting, Council unanimously approved the Partnership's Subdivision Plan for Monroe Meadows, with Monroeville's Municipal Manager and Council's Chairperson signing the Plan. Additionally, Monroeville's Municipal Engineer signed the Subdivision Plan, certifying that it met all engineering and design requirements of the applicable Monroeville ordinances. The Subdivision Plan included an access road from the existing public street, MacBeth Drive, into Monroe Meadows, a 50–foot wide and 440–foot long road

designated Rolling Fields Lane (Lane).[1] The Subdivision Plan did not depict a cul-de-sac on the Lane. The Subdivision Plan was subsequently recorded with the Allegheny County Recorder of Deeds.

Additionally, Monroeville and the Partnership negotiated and approved an Escrow Agreement, a Financial Security Agreement, and a Developers Agreement/Public Site Improvement (collectively, the Agreements). The Agreements each indicate that the Lane was to be a public street, and further identified the Lane as a public improvement. The Developers Agreement required the Partnership to fully and completely construct all public and private improvements as shown on the approved development plan and construction drawings, and further provided that the public improvements shall be dedicated by the Partnership to Monroeville.

During the development's construction, the Partnership constructed the Lane in accordance with the November 9, 2000 approved Subdivision Plan. During the Lane's construction, neither Monroeville, nor its Engineering Department, ever indicated that the Lane must have a cul-de-sac pursuant to any ordinance, or as a condition of its acceptance as a municipal street.

On January 13, 2004, the Partnership submitted to the Municipal Engineer a request for the Lane's dedication. No issues were raised therefrom regarding a cul-de-sac. The dedication request was considered by Council at several hearings thereafter in April and June of 2004, and the Municipal Engineer advised Council that the Lane complied with all local requirements. However, no dispositive action was taken on the dedication request. The request was again considered at the July, 2004 meeting of Council, at which time Monroeville's Municipal Solicitor raised the issue of whether the Lane required a cul-de-sac under the applicable provisions of the Monroeville Subdivision and Land Development Ordinance (Ordinance). The dedication request was again tabled by Council, with no dispositive action taken thereon.

On January 21, 2005, the Partnership submitted a Land Development Modification Request (Hardship Request) to the Planning Commission, requesting a waiver of the purported cul-de-sac requirement in exchange for an easement allowing Monroeville to use another private road within Monroe Meadows, namely, Trefoil Court, for municipal vehicle use. Trefoil Court ended in a cul-de-sac that complied with the dimensions suggested in the Ordinance. On February 16, 2005, the Planning Commission voted to recommend denial of the Hardship Request. On March 8, 2005, the Partnership presented the Hardship Request to Council, with supporting materials, asserting that the imposition of a new cul-de-sac requirement for the Lane would result in an undue hardship. Council denied the Hardship Request. On April 11, 2005, the Partnership appealed from Council's denial of the Hardship Request to the Trial Court.

At its May, 2005 meeting, Council voted to deny the Partnership's pending request for the dedication of the Lane as a municipal street. On June 9, 2005, the Partnership appealed from Council's denial of the Dedication Request to the Trial Court. The Trial Court thereafter consolidated the Partnership's Hardship Request and Dedication Request appeals.

Because Council did not issue findings of fact or conclusions of law, and further because the parties agreed to the entry of a designated record before the Trial Court

1. Rolling Fields Lane was previously labeled, in prior site plans, "Meadowsweet Lane."

that included additional evidence, the Trial Court conducted a trial *de novo* on the consolidated Hardship Request and Dedication Request appeals.

The Trial Court thereafter heard argument and received evidence from both parties. Following the close of argument, the Trial Court attempted to reconcile the matter, recommending that the Partnership propose construction of a partial cul-de-sac that would enable emergency vehicles to turn around on the Lane. The Partnership then submitted to the Trial Court certain site plan amendment materials proposing two different partial cul-de-sacs. Monroeville rejected those amended site plan proposals, asserting that neither design met the municipal standards for a cul-de-sac.

Subsequently, the Trial Court directed both parties to submit prepared Findings of Fact, Conclusions of Law, and Proposed Order of Court thereto. After review of the argument, record, and both parties' post-argument submissions, the Trial Court adopted the Partnership's proposed Findings and Conclusions. By order dated November 30, 2005, the Trial Court reversed the Council's March 10, 2005 and May 8, 2005 decisions, granted the relief sought in the Hardship Request as amended by a site plan, and directed Council to accept the Lane within sixty days of completion of a forty-eight foot cul-de-sac as depicted in the site plan amendment (to be certified by a municipal engineer as compliant with the paving and curb requirements of the Ordinance). Monroeville now appeals from the Trial Court's order.

■ Our scope of review in a land use appeal, where the lower court received additional evidence, is limited to determining whether or not the lower court abused its discretion or committed an error of law. *Metzger v. Zoning Hearing Board of Warrington Township,* 85 Pa.Cmwlth. 301, 481 A.2d 1234 (1984).

■ Council first argues that the Trial Court erred in requiring Council to accept the Lane as a public street. We first note that Council supports the majority of its arguments to this Court on the premise that its Ordinance *mandates* a cul-de-sac on a street such as the Lane. Tellingly, Council is unable to quote any precise language within the Ordinance where which such mandate can be found. Our review of the Ordinance reveals no such mandatory language concerning cul-de-sacs.

In the one instance of argument to this Court where Council does indeed found its implicit assumption of required cul-de-sacs on the actual language of the Ordinance itself, Council cites to Section 3–02 of the Ordinance. However, that section simply defines "minor roads," and merely notes circumstances in which a cul-de-sac would be acceptable. Reproduced Record (R.R.) at 270a–271a. A plain reading of the express language of Section 3–02 unambiguously[2] reveals that there is no requirement that all minor streets end in a cul-de-sac. Neither Section 3–02, nor the Ordinance's definitions section in general, reference or prohibit a minor street that does not end in a cul-de-sac. As such, the Trial

2. We emphasize that the Ordinance contains no ambiguity as to a lack of any *requirement* for a cul-de-sac on minor roads. However, we note that, to the extent that any ambiguity could be read to exist in relation to the interpretation of any suggestive cul-de-sac uses or dimensions within the Ordinance, Section 603.1 of the Pennsylvania Municipalities Planning Code (MPC), Act of July 31, 1968, P.L. 805, *added by* the Act of December 21, 1988, P.L. 1329, *as amended,* 53 P.S. § 10603.1, makes clear that such ambiguity be interpreted "in favor of the property owner and against any implied extension of the restriction."

Court properly held that the Ordinance does not require that a cul-de-sac be constructed at the end of the Lane, and Council's arguments that are founded implicitly on such a requirement are of no avail.

Council argues that Section 1703 [3] of the Borough Code, as well as Section 503(3) [4] of the MPC, and our precedents [5] interpreting those sections, establish that no municipalities shall be required to accept streets for public dedication. Council emphasizes that municipal acceptance of a proposed dedication, therefore, is purely discretionary. While, most generally speaking, Council is correct as to that well established reservation of such discretion, our inquiry under the instant facts cannot end there, and the particular circumstances of this matter are not resolved by simple resort to Council's discretion.

The Trial Court concluded that Monroeville was estopped from imposing a new cul-de-sac requirement on the Lane, years after it was constructed in accordance with the Subdivision Plan and the Agreements. As support, the Trial Court cited primarily to *Raum v. Board of Supervisors of Tredyffrin Township,* 29 Pa.Cmwlth. 9, 370 A.2d 777 (1977). *Raum* held that a municipality is precluded from imposing later requirements differing from those identified in the approved plans and agreements, where that municipality has entered into agreements which guarantee a project's completion. Specifically, we held in *Raum* that a municipality's approval of subdivision plans "constituted approval of the dimensions of the rights of way and cartways of streets shown on the plans." *Raum,* 370 A.2d at 798.

In the matter *sub judice,* Paragraph 27 of the Developers Agreement requires Monroeville to accept "public improvements" once they have been certified as competent by the Municipal Engineer. R.R. at 140a. The Agreements, read in conjunction with each other, require bond to be posted to cover the costs of public improvements, and identify therein only two public improvements: the Lane and the sanitary sewer system. R.R. at 103a, 105a–148a. Thus, the Trial Court properly concluded that the Lane satisfied the requirements under the Developers Agreement for acceptance of the dedication. R.R. at 480a–481a.

On the Subdivision Plan, Monroeville's Municipal Engineer certified that the Lane, without a cul-de-sac, complied on its face with the Ordinance. The Municipal Engineer later testified that the Lane was constructed in accordance with the Ordinance. R.R. at 189a–190a, 218a–219a. Monroeville in general, and Council, reviewed, accepted, and signed the Subdivision Plan in November, 2000, and the Plan was recorded. The fact that the Lane was to be a public street was discussed and clarified in a public meeting before Council. R.R. at 75a. The understanding of the Lane as a public street was reflected in the agreement among the Partnership and

3. Act of February 1, 1966, P.L. (1965) 1656, *as amended,* 53 P.S. § 46703.

4. 53 P.S. § 10503(3).

5. Council cites primarily to *Hanscom v. Bitler,* 883 A.2d 1111 (Pa.Cmwlth.2005), in which developers brought a mandamus action seeking to compel a township to accept dedication of a subdivision road as a public road. In affirming the trial court's sustaining of the defendant's demurrer, we held that the developers were not entitled to a writ of mandamus. In so doing, we reviewed the language of Section 2316 the Second Class Township Code, Act of May 1, 1933, P.L. 103, *as amended,* 53 P.S. § 67316, holding that the acceptance of a proposed dedication is purely discretionary thereunder. Council asserts that *Hanscom's* ruling is equally applicable to the parallel language of Section 1703 of the Borough Code.

the owners of other subdivided properties. R.R. at 82a–90a. It is undisputed that Monroeville issued building permits for the Lane, and that the development and construction thereafter proceeded accordingly.

We agree with the Trial Court's recognition of *Raum's* control over the instant, similar facts, given Monroeville's November, 2000 approval of the Subdivision Plan and its acknowledgement of the Lane as a public improvement under the Developers Agreement. Monroeville's acquiescence [6] in allowing the Partnership to complete construction under those plans and agreements estops it from now requiring a further cul-de-sac condition.

Next, Council argues that the Partnership is not entitled to a hardship waiver. Council asserts that no hardship exists, as the Partnership was not required by Monroeville to put in a cul-de-sac prior to constructing the development, and was not required to expend any financial resources or acquire any additional property. In essence, Council argues that there is no valid reason as to why the Lane cannot remain private. Alternatively, Council argues that any hardship that exists was created by the Partnership itself, as it, and not Monroeville, initially designated the Lane as a private road on one plan. Notwithstanding the dispositive nature of our conclusion that Council is estopped from now enforcing cul-de-sac requirements on the Partnership, we disagree. Independently from the estoppel issue, as articulated above, the Partnership is entitled to a grant of a hardship waiver under the instant facts.

A waiver from the Ordinance's requirements is authorized under Section 512.1(a) of the MPC, 53 P.S. § 10512.1(a), and under Ordinance Sections 2–09 and 3–01(c). R.R. at 269a–270a. Additionally, in *Levin v. Township of Radnor,* 681 A.2d 860 (Pa. Cmwlth.1996), this Court held that a waiver was proper where a development offers a substantial equivalent to a subdivision requirement, where an additional requirement would offer little or no additional benefit, and where literal enforcement of a requirement would frustrate the effect of improvements.

The evidence herein shows that requiring the addition of the cul-de-sac would result in undue hardship, and that a modification would not be contrary to the public interest. The Partnership does not own the land beyond the Lane, where Council would require the cul-de-sac. R.R. at 482a–483a. Denial of the modification would unquestionably frustrate the development. When coupled with the proposed easement for access to Trefoil Court, the functional equivalent of a cul-de-sac at the Lane's end is achieved and waiver is warranted. The costs of constructing another cul-de-sac would be unduly burdensome and disproportionate to any benefit. R.R. at 482a–483a. As such, the Trial Court did not err in granting the relief sought in the Partnership's amended Hardship Request.

Council next argues that the Trial Court erred, and/or abused its discretion, in entertaining and considering offers of settlement during the course of proceedings. Council argues that following argument, the Trial Court urged the parties to consider a settlement proposing a modified cul-de-sac, and then ordered a conciliation with regard to the proposal. At the conciliation, Monroeville advised the Court that it was unwilling to accept the proposed settlement. The Court then directed the Partnership to file a Motion to Supplement the Record including one of the two pro-

6. Monroeville's own Solicitor admitted, in regards to Monroeville's address of the process at issue, that "no one was really paying attention to details." R.R. at 233a.

posals, and then directed both parties to submit proposed Findings and Conclusions. Council argues that this was error on the Trial Court's part, as offers of settlement or compromise are inadmissible at trial.[7] Specifically, Council argues that it was error for the Trial Court to accept or consider the Partnership's Motion to Supplement the Record, filed in response to the Trial Court's direction.

Council's argument on this issue has been waived, as it is now being raised for the first time on appeal, and was not raised in the proceedings below contemporaneously with the admission of the challenged evidence. Pa. R.A.P. 302(a).[8] Although Council argues that it did not waive this issue, since it opposed the merits of the Motion to Supplement, Council concedes that it filed no reply to the Motion. Additionally, and dispositively on this issue, Council is unable to cite to any place within the record before the Trial Court where it specifically objected to the entry of the Motion. Argument against the merits of a motion do not constitute objection to its entry upon the record, for purposes of appellate review of the entry thereof.

Finally, Council argues that the Trial Court erred and/or abused its discretion in adopting the Partnership's proposed Findings and Conclusions in rendering its decision. The crux of Council's argument on this issue seems to be its objection to the Trial Court's adoption of the Partnership's proposed Findings and Conclusions, over the proposed Findings and Conclusions of Council, without any elaboration as to why the Trial Court chose one party's proposal over the other. This Court has consistently held that a trial court may properly adopt findings of fact and conclusions of law submitted by a party. *In re: PP&L, Inc.*, 838 A.2d 1 (Pa.Cmwlth.2003). *PP&L* expressly rejected a similar argument to that made by Council herein. In the instant matter, the Trial Court expressly stated that it had considered the record evidence, and both parties' briefs and arguments. Council offers no basis for its contention that the Trial Court failed to consider this extensive record, and its argument on this issue has no basis in law.

Accordingly, we affirm.

## *ORDER*

AND NOW, this 28th day of February, 2007, the order of the Court of Common Pleas of Allegheny County, dated November 30, 2005, at No. SA 05-00380 (Consolidated with SA 05-00599), is affirmed.

7. In support of its argument, Council cites to authority from Superior Court, namely, *Commonwealth v. Terry,* 275 Pa.Super. 184, 418 A.2d 673 (1980).

8. Pennsylvania Rule of Appellate Procedure 302(a) states:

Requisites for Reviewable Issue
(a) General rule. Issues not raised in the lower court are waived and cannot be raised for the first time on appeal.