# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

James M. Ellzey and      :
Kathie A. Ellzey,       :
     Appellants   :
           :
   v.       : No. 990 C.D. 2019
           : Argued: September 15, 2020
Upper Gwynedd Township   :
Board of Commissioners and  :
Kurt R. Hague and Caren A. Hague :
and Caracausa Building and   :
Development      :


BEFORE: HONORABLE P. KEVIN BROBSON, Judge
     HONORABLE ANNE E. COVEY, Judge
     HONORABLE CHRISTINE FIZZANO CANNON, Judge


*OPINION NOT REPORTED*


**MEMORANDUM OPINION**
**BY JUDGE BROBSON**    **FILED: November 19, 2020**


James M. Ellzey and Kathie A. Ellzey (Appellants) appeal from an order of the Court of Common Pleas of Montgomery County (common pleas), dated June 20, 2019. Common pleas denied Appellants' land use appeal and affirmed the resolution of the Upper Gwynedd Township Board of Commissioners (Board), dated September 24, 2018 (Resolution). In the Resolution, the Board granted preliminary and final subdivision and land development approval to Caracausa Building and Development (Caracausa) with respect to property owned by Kurt R. Hague and Caren A. Hague (the Hagues, and collectively with Caracausa, Owners). For the following reasons, we will reverse common pleas' order.

## I. BACKGROUND

The Hagues are the record owners of the property known as 209 Morris Road (Property) in Upper Gwynedd Township (Township), Montgomery County, Pennsylvania. In January 2018, Caracausa—which then held, and now holds, an equitable interest in the Property—submitted to the Township an application for preliminary and final subdivision and land development approval (Application). The Application proposed to subdivide the Property into two lots. The first proposed lot (Lot 1) would contain the existing Hague residence. The second proposed lot (Lot 2) would be conveyed to Caracausa for construction of a new single-family dwelling. The Application included a plan entitled "Minor Subdivision Plans of Morris Road Minor Subdivision," prepared by the Crossroads Group, LLC, dated January 31, 2018, most recently revised on September 20, 2019 (the Plan). (Supplemental Reproduced Record (S.R.R.)[1] at 219b-28b[2].)

The Property is rectangular in shape, with the long axis of the rectangle oriented roughly from southwest to northeast. The Property's long southeastern side abuts Appellants' property known as 205 Old Morris Road (Ellzey Property). As shown on the Plan, the proposed Lot 2 would be a flag lot[3] with the flag portion consisting of roughly the northeastern half of the Property. The pole portion, 25 feet in width, would run down the Property's southeastern side (adjacent to the Ellzey

---

[1] The Plan, as provided in full in the Supplemental Reproduced Record, is nearly impossible to read. Other portions of the record contain more legible details of some of the Plan sheets. (*See* Reproduced Record (R.R.) at 130a; Original Record (O.R.), Item No. 13, at 229-37.)

[2] The parties did not number the pages in the Reproduced or Supplemental Reproduced Records using a lower case "a" or "b," respectively, after the numerals, as required by Pa. R.A.P. 2173. We will cite to the reproduced records in the proper format.

[3] In general, a "flag lot" consists of "both a main portion (the 'flag') and a narrow strip (the 'pole') that connects the main portion to a public street." *Bartkowski v. Ramondo*, 219 A.3d 1083, 1085 (Pa. 2019).

Property) to the southern corner of the Property. The proposed subdivision would divide the Property roughly in half. Lot 1 would occupy the southwestern half of the Property (with the exception of the pole portion of Lot 2 running between Lot 1 and the Ellzey Property).

The only road access to the Property has always been from its southwestern side. Historically, Morris Road abutted and ran parallel to the Property's entire southwestern boundary. Morris Road was formerly known as Township Line Road because its centerline forms the boundary between the Township and Worcester Township. At some point in the past, the Pennsylvania Department of Transportation (PennDOT) altered the course of Morris Road in the vicinity of the Property. At present, Morris Road comprises a portion of the former Township Line/Morris Road adjacent to the western corner of the Property. When viewed from a point northwest of the Property and standing on the ground, Morris Road heads toward the Property, abuts about one-third of the Property's southwestern edge, and then curves away from the Property to the south. The remainder of the former Township Line/Morris Road adjacent to the Property—running straight down the remaining two-thirds of the Property's southwestern edge—is unpaved and no longer used as a road. Commencing approximately six feet southeast of the Property, that road becomes paved and is known as Old Morris Road. Old Morris Road is used as a public street from that point to the southeast and is maintained by the Township.

Thus, there is an unpaved area of the former Township Line/Morris Road that lies between Morris Road and Old Morris Road (Disputed Area). The Disputed Area is roughly triangular in shape and is bounded (1) on the southeast by the terminus of the pavement of Old Morris Road, (2) on the northeast by the historic Township Line

3

Road right-of-way line, and (3) on the southwest by the Morris Road right-of-way line and the Township boundary line. The ownership of the Disputed Area is the subject of a pending quiet title action initiated by Appellants against Owners. In this matter, however, the Board concedes that the Township owns no fee simple interest in the Disputed Area. (*See* Board's Br. at 3-4.) Instead, the boundaries of the Property and the Ellzey Property extend to the centerline of what was Township Line Road (which also constitutes the Township boundary). The respective owners of those properties hold fee simple title to the portions of the Disputed Area conveyed to them in their respective deeds. (*See id.*; R.R. at 75a-81a.)

Prior to the Application, the Property's only public road access was via a driveway connecting to Morris Road near the Property's western corner. The Plan depicts Lot 1 retaining that existing access via Morris Road and Lot 2 gaining access via a new driveway to be constructed within the pole portion (or access strip) of Lot 2, then extending through the Disputed Area, and finally meeting the existing pavement of Old Morris Road at the southeastern end of the Disputed Area.

The Board held a public meeting on the Application on September 24, 2018. Appellants spoke at the meeting in opposition to the Application. Board members and Owners confirmed at the meeting that Owners were not seeking any variance or other relief from the Township's Zoning Ordinance (Zoning Ordinance) as part of the proposed project. At the conclusion of the meeting, the Board passed the Resolution, approving the Plan and Application and granting seven waivers of the Township's Subdivision and Land Development Ordinance (SALDO). Appellants appealed the Resolution to common pleas, which affirmed on the Board's record.

4

## II. ISSUES

On appeal to this Court,[4] Appellants raise three issues for our consideration. First, they claim that Lot 2 fails to comply with the Zoning Ordinance, because Lot 2 does not connect with a "public street," and, therefore, the Board erred in granting the Application without a zoning variance. Second, Appellants claim that the Board erred by purporting to approve improvements, which, Appellants assert, encroach into Worcester Township and the right-of-way of Morris Road, without the respective approvals of Worcester Township and PennDOT. Third, Appellants argue that the Board erred in granting waivers of the SALDO when Caracausa did not meet the requisite standard for justifying a waiver under Pennsylvania law.

## III. DISCUSSION

### A. Connection to a "Public Street"

Appellants first argue that the Application does not comply with the Zoning Ordinance because the Disputed Area—to which Lot 2's access strip connects—is not a "public street." In so arguing, Appellants rely on Section 195-3 of the Zoning Ordinance, which provides:

> **Lot, Flag (Rear Lot)**[:] A lot which is connected to a *public street*, by way of an access strip. The access strip shall be not less than 25 feet in width and shall be held in fee simple ownership as a part of the flag lot. The area of the access strip (up to a point where the minimum lot width is achieved) shall not be included in calculating the minimum lot area required for the Zoning District in which it is located. The front yard of any such lot shall be either that facing the access driveway or that facing the access street.

---

[4] "[I]n a land use appeal, where the trial court has not taken any additional evidence, our scope of review is limited to a determination of whether the governing body [(*i.e.*, the Board)] has committed an error of law or abused its discretion." *Herr v. Lancaster Cnty. Plan. Comm'n*, 625 A.2d 164, 167 (Pa. Cmwlth. 1993), *appeal denied*, 649 A.2d 677 (Pa. 1994). "[T]he governing body abuses its discretion when its findings of fact are not supported by substantial evidence." *Id.*

5

(Emphasis added.)  Appellants correctly note that the term "public street" is not a defined term in the Zoning Ordinance, but they (and Owners) focus on the following definition in Section 195-3 of the Zoning Ordinance:

> **Street or Road**[:]  A strip of land, *including the entire right-of-way (i.e., not limited to the cartway)*, intended for use as a means of vehicular and pedestrian circulation to provide access to more than one lot.  The word "street" includes street, avenue, boulevard, road, highway, freeway, parkway, alley, viaduct and any other ways *used or intended to be used by vehicular traffic or pedestrians*, whether public or private.

(Emphasis added.)

Based on these definitions, Appellants claim that the Disputed Area is not a "street" (and, therefore, not a "public street") because, for the past 30 years, it has not been "used or intended to be used" by vehicles or pedestrians.  Specifically, Appellants allege that they (not the Township) have maintained a six-foot by eight-foot "grassy strip" located in front of the Ellzey Property and comprised of the southeastern end of the Disputed Area.  (Appellants' Br. at 13.)  They essentially argue that the Township has abandoned any historic street right-of-way in the Disputed Area and no longer "intend[s]" to use the Disputed Area for vehicles or pedestrians.  In support, they emphasize the Township's placement of a "No Outlet" sign along the paved portion of Old Morris Road just southeast of the Disputed Area and the Township's failure to include the Disputed Area in its requests to PennDOT for allocation of liquid fuels taxes for Old Morris Road.  Appellants point out that Owners conceded before the Board that the Disputed Area is "no longer in use" as a street.  (R.R. at 119a.)  They argue that Owners failed to meet their burden of proving that Lot 2 will connect to a public street.

In response, the Board points out that the definition of "street" in the Zoning Ordinance expressly includes the "entire *right-of-way*" of a street.

6

The Board observes that Section 195-3 of the Zoning Ordinance broadly defines "right-of-way" as "any real property . . . in which the Township has . . . an interest as a trustee for the public" and points out that Old Morris Road is, undisputedly, a public street for most of its length outside the Disputed Area. Accordingly, the Board argues, the Disputed Area is a "public street" under the Zoning Ordinance because it has always been part of the right-of-way of a public street (*i.e.*, Old Morris Road), regardless of the fact that it is not paved or used like the rest of that street. The Board also claims that the Township has never formally vacated the Disputed Area as a public street despite that Section 2005(a) of The First Class Township Code[5] authorizes it to do so. In support of its theory, the Board cites *Clifford Township v. Ransom*, 398 A.2d 768 (Pa. Cmwlth. 1979), where we held that a street remained the maintenance responsibility of a township because it was never formally vacated. The Board, therefore, contends that the Disputed Area must remain part of Old Morris Road's right-of-way (and, thus, a public street) until it is formally vacated by the Township.

Owners add that Appellants, as objectors, bear (and failed to meet) the burden of proving that the Township has abandoned the Disputed Area as a public street. Moreover, they assert that, even if Appellants could have shown such abandonment, Owners would retain fee simple title to the portion of the Disputed Area northwest of the Ellzey Property line. They note that the deeds for both the Ellzey Property and the Property describe the properties as extending to the centerline of Township Line Road. Owners also emphasize that any abandonment by the Township would not extinguish the private easement rights that Owners possess in the portion of the Disputed Area southeast of the Ellzey Property line.

---

[5] Act of June 24, 1931, P.L. 1206, *as amended*, 53 P.S. § 57005(a).

7

Before proceeding, we first note that fee simple ownership of the Disputed Area is not at issue in this proceeding, but is properly the subject of the separate pending quiet title action. Second, we note that the Zoning Ordinance requires a flag lot's access strip (owned in fee simple) to be contiguous with a "public street," so we will not consider private easements or rights-of-way short of fee simple ownership that may or may not exist over the Disputed Area. Accordingly, the fundamental dispute between the parties on this issue is whether the Disputed Area is a "public street" as that term is used in Section 195-3 of the Zoning Ordinance.

When construing the language of a zoning ordinance, we apply the rules of statutory construction. *Kohl v. New Sewickley Twp. Zoning Hearing Bd.*, 108 A.3d 961, 968 (Pa. Cmwlth. 2015). Just as in statutory interpretation, the primary objective of interpreting ordinances is to determine the intent of the enacting body, and the plain language of an ordinance provides the most reliable indication of that intent. *Id.* Thus, "[w]here the words in an ordinance are free from all ambiguity, the letter of the ordinance may not be disregarded under the pretext of pursuing its spirit. An ambiguity exists when language is subject to two or more reasonable interpretations . . . ." *Adams Outdoor Advert., LP v. Zoning Hearing Bd. of Smithfield Twp.*, 909 A.2d 469, 483 (Pa. Cmwlth. 2006) (citations omitted), *appeal denied*, 923 A.2d 1175 (Pa. 2007). If, and only if, the text of an ordinance is ambiguous, we apply two distinct rules in our appellate review. First, we will generally defer to the governing body's interpretation of its own ambiguous ordinance. This rule, nonetheless, is tempered by the second rule, which compels us to interpret ambiguous ordinance language in favor of the affected property owner. *See Williams Holding Grp., LLC v. Bd. of Supervisors of W. Hanover*

8

*Twp.*, 101 A.3d 1202, 1213 (Pa. Cmwlth. 2014); Section 603.1 of the Pennsylvania Municipalities Planning Code (MPC).[6]

Whether an unused segment of a right-of-way constitutes a "public street" under a zoning ordinance appears to be an issue of first impression, both generally and in the specific context of flag lot provisions. Although it does not define the term "public street," the Zoning Ordinance defines one of the term's two constituent words—"street"—as a strip of land "used or intended to be used" for vehicular or pedestrian traffic. Section 195-3 of the Zoning Ordinance. The definition is further broadened to include not only the paved surface of such a strip of land but "the entire right-of-way." *Id.*

The parties offer two competing views of what constitutes a "street" for purposes of determining whether the Disputed Area constitutes a "public street." Under Appellants' view, the Disputed Area is not a street because it is not currently used by pedestrians or vehicles, and the Township's actions show no intention of such use. In support, Appellants direct us to our decision in *Tobin v. Radnor Township Board of Commissioners*, 597 A.2d 1258 (Pa. Cmwlth. 1991). In *Tobin*, we held that a "paper" street—depicted on recorded documents but never opened or improved—was not within the plain meaning of the term "street" under the SALDO at issue there. But unlike *Tobin*, the instant case deals with a right-of-way that was, at some time in the past, a functioning public street, part of which continues to function as a public street today. We distinguish *Tobin* on that basis.

More significantly, Appellants appear to ignore the inclusion of the term "entire right-of-way" in the Zoning Ordinance's definition of "street." As the Board

---

[6] Act of July 31, 1968, P.L. 805, *as amended*, added by the Act of December 21, 1988, P.L. 1329, 53 P.S. § 10603.1.

9

and Owners emphasize, the Zoning Ordinance defines "right-of-way" to include property in which the Township functions as a "trustee for the public." *See* Section 195-3 of the Zoning Ordinance. While the Zoning Ordinance certainly does not make every right-of-way into a "street," the inclusion of the broadly defined term "right-of-way" has the effect of broadening the definition of "street" beyond considerations such as paving and signage, on which Appellants focus. Appellants' narrow interpretation of the term "street" is unreasonable because it ignores that obvious breadth.

It is undisputed that much of Old Morris Road is currently a "street" because it is actually used for vehicular traffic. The remaining question is whether the Disputed Area remains part of the "right-of-way" of Old Morris Road—or, in the Zoning Ordinance's terms, whether the Township retains a duty as a "trustee for the public" with respect to the Disputed Area. Our decision in *Clifford Township* resolves this question in the affirmative, but it does so for a different reason than the Board suggests. In *Clifford Township*, we addressed a factually similar scenario, where the predecessor to PennDOT had realigned a state highway, leaving a 610-foot section of the former highway unused for many years. *Clifford Twp.*, 398 A.2d at 769. There, as here, the Township never exercised statutory authority (in that case, under The Second Class Township Code[7]) to vacate the abandoned section of highway. We observed that "townships do not have any common-law power to . . . vacate roads," and that the township could do so "*only* by ordinance" pursuant to its statutory authorization. *Id.* (emphasis added). We concluded that, unless the township was to vacate the unused highway section pursuant to statutory authority, it would remain responsible for maintaining that section. *Id.* at 769-70.

_____

[7] Act of May 1, 1933, P.L. 103, *as amended*, 53 P.S. §§ 65101-68701.

Here, it is undisputed that the Township has taken no formal action pursuant to any statutory authority to vacate the right-of-way within the Disputed Area.[8] We conclude, therefore, that the Township has not vacated that right-of-way and continues to be a "trustee for the public" with respect to the Disputed Area. Accordingly, under the Zoning Ordinance's unambiguous definitions, the Disputed Area continues to constitute the "right-of-way" of Old Morris Road (a public street) and is, therefore, a public street itself.[9]

## B. Encroachments

Appellants next argue that the Plan depicts and, thus, that the Board purported to approve, "encroachments" into both Worcester Township and the Morris Road right-of-way. By "encroachments," Appellants appear to be referring to the proposed driveway to be constructed as an improvement within the Disputed Area. They assert that the Board erred in granting approval of the Application without conditioning that approval on (1) approval by Worcester Township of improvements within its boundaries and (2) approval from PennDOT of improvements within the Morris Road right-of-way.

In response to the argument regarding Worcester Township, the Board asserts that "no improvements are proposed which encroach upon the lands of Worcester Township." (Board's Br. at 16.) The Board emphasizes statements at the public meeting to the effect that the driveway is located in the Township. It also claims

---

[8] In making this observation, we do not address whether the Township has statutory authority—pursuant to Section 2005(a) of the First Class Township Code, 53 P.S. § 57005(a), or any other statutory provision—to vacate part of Old Morris Road.

[9] We note in passing that even if we were to find ambiguity in the Zoning Ordinance's definition of "street," we would not disturb the Board's apparent determination that the Disputed Area is a "public street." Instead, we would (1) defer to the Board's interpretation of the Zoning Ordinance and (2) construe the ambiguity in favor of Owners, both of which would support the Board's decision. *See Williams Holding Grp.*, 101 A.3d at 1213.

11

that the Township's engineer did not identify any encroachment into Worcester Township. Owners add that, although prior versions of the Plan may have shown proposed improvements in Worcester Township, the Plan, as approved, shows no such encroachment. In response to Appellants' claim of encroachment into the Morris Road right-of-way, Owners similarly state that the present Plan shows no such encroachment.

We have held that municipalities generally have no authority to control land use beyond their own borders:

> Section 501 of the [MPC, 53 P.S. § 10501,] grants municipalities the authority to control development *within their borders*. *See* 53 P.S. § 10501 (making multiple references to the authority to control development "*within the municipality*"); *see also King v. Perkasie Borough Zoning Hearing Board*, . . . 552 A.2d 354, 355-56 ([Pa. Cmwlth.] 1989) (interpreting Section 501 of the MPC to forbid extraterritorial control by a municipality on the grounds that, under the MPC, a municipality's powers stop at its border).

*Hamilton Hills Grp., LLC v. Hamilton Twp. Zoning Hearing Bd.*, 4 A.3d 788, 795 (Pa. Cmwlth. 2010) (emphasis added). In *Hamilton Hills Group*, we discussed limited exceptions to that general principle, such as under written agreements between neighboring municipalities. But we reaffirmed the general rule that, with respect to zoning and subdivision controls, municipalities have no authority outside their geographic boundaries. *Id.;* s*ee also King*, 552 A.2d at 355-56 (applying this rule in context of SALDO). We have also held that it is proposed *development* in an adjoining jurisdiction—rather than depiction of vacant property necessary for the subdivision approval—that triggers the requirement to seek approval from that adjoining jurisdiction. *King*, 552 A.2d at 356.

Under both the MPC and the SALDO, when the Board approves a subdivision and land development application, it is actually approving the new property lines

and proposed improvements as they are depicted on the plan attached to the application. Section 508 of the MPC, 53 P.S. § 10508, which authorizes municipalities to approve subdivision and land development applications, expressly describes such applications as "applications for approval *of a plat*." (Emphasis added.) Pursuant to the definitions in Section 107 of the MPC, 53 P.S. § 10107, a "plat" is "*the map or plan* of a subdivision or land development, whether preliminary or final." (Emphasis added.) Similarly, Section 168-8 of the SALDO, which authorizes "minor subdivisions" and was specifically invoked in the Application, describes the procedures for "*plan* approval" and for the Board to "certify[] approval *of the plan*." (Emphasis added.) The SALDO also requires final land development plans, such as the Plan, to depict "all boundary lines" and "all [proposed] roads, parking facilities, and pedestrianways." Sections 168-11(A)(2)(b) and 168-12(E) of the SALDO.

Accordingly, because "a subdivision involves, at its core, a request for the approval of maps and drawings, a comparison of the applicant's submission, the terms of the [SALDO], and the [Board's] decision . . . usually will afford a sufficient basis for review." 2 Robert S. Ryan & John E. Ryan, Pa. Zoning Law and Prac. § 11.2.5 (1981). Here, a detail of the third sheet of the Plan depicts intersections of (1) the outline of the proposed driveway (represented by a continuous thin line) and (2) the boundary between Worcester Township and the Township (represented by a thick two-dashed line). (R.R. at 130a.) The first Plan sheet shows the same encroachment. (S.R.R. at 220b.) On both sheets, the southwesternmost portion of the proposed driveway line does not intersect the existing pavement line of Old Morris Road (represented by a thin dashed line) until

13

after the driveway line crosses into Worcester Township to the southwest of the Township Boundary line. (*Id.*)

Thus, it is beyond dispute that the Plan, as contained in the record,[10] actually depicts a small area of overlap between the proposed driveway construction and Worcester Township. That is true notwithstanding statements by a representative of Caracausa that they "kept [the driveway] in [the Township]" and that Caracausa is "not encroaching on Worcester [Township]." (R.R. at 121a.) The same representative also admitted that Caracausa "accomplished [its] access as it's shown on the [P]lan." (*Id.*) The Township's engineer acknowledged the encroachment at the public meeting before the Board, stating that "[t]here is a very small piece that does encroach into Worcester [Township]." (*Id.* at 110a.) Moreover, we do not believe that the small physical size of the encroachment (which is, perhaps, only a few square feet as depicted on the Plan) diminishes its significance. The Township has no authority to approve construction of improvements—large or small—outside its geographic boundaries under these circumstances. *See Hamilton Hills Grp.*, 4 A.3d at 795; *King*, 552 A.2d at 356.

The Resolution specifically approved every individual sheet of the Plan, including the sheets that show the encroachment, without imposing any condition that Caracausa obtain approval from Worcester Township. (*Id.* at 56a-60a.)

---

[10] At oral argument, counsel for Owners stated that a version of the Plan not showing any proposed improvements in Worcester Township has been recorded (presumably with the Montgomery County Recorder of Deeds). Counsel suggested this recorded version of the Plan might differ from the version in the record. Our review in a land use appeal, however, determines whether the Board erred or abused its discretion based only on the complete record created before the Board. *Morris v. S. Coventry Twp. Bd. of Supervisors*, 836 A.2d 1015, 1018 n.3 (Pa. Cmwlth. 2003), *appeal denied*, 860 A.2d 126 (Pa. 2004); *see also Tennyson v. Zoning Hearing Bd. of W. Bradford Twp.*, 952 A.2d 739, 747 n.10 (Pa. Cmwlth. 2008) ("[A]n appellate court is limited to considering only those facts which have been duly certified in the record on appeal."). Accordingly, the version of the Plan contained in the record controls our analysis.

14

Caracausa did not seek or obtain that approval before submitting the Application, and, as we have discussed, the Board's approval did not extend to the portion of the proposed driveway located in Worcester Township. But the absence of approval from Worcester Township does not require, or even justify, outright denial of the Application. Rather, "courts have long held that, where an outside agency's approval is required, the municipality should condition final approval upon obtaining a permit, rather than denying [the application]." *Morris*, 836 A.2d at 1026; *see also Borough of Jenkintown v. Bd. of Comm'rs of Abington Twp.*, 858 A.2d 136, 142 (Pa. Cmwlth. 2004) (holding that, where zoning officer had not yet granted permit, board "could *at most* have granted conditional approval" of land development application (emphasis added)). Thus, the Board erred in issuing the Resolution without conditioning its approval on the required Worcester Township approval.[11] Under these circumstances, we would ordinarily remand this matter to common pleas with instructions to remand to the Board so that it may add the appropriate condition to its approval of the Plan. *See Borough of Jenkintown*, 858 A.2d at 143. In this matter, however, because we will reverse common pleas' order on other grounds (as discussed below), no remand is necessary.

### C. Waivers of SALDO

Finally, Appellants argue that the Board erred in granting seven waivers of provisions of the SALDO. In support, Appellants rely on our unpublished memorandum opinion in *Lake MacLeod Homeowners Association, Inc. v. Pine Township Board of Supervisors* (Pa. Cmwlth., No. 1247 C.D. 2017, filed

---

[11] The same analysis would apply to the alleged encroachment in the PennDOT-controlled right-of-way of Morris Road. But we note that, unlike for Worcester Township, the Plan shows no encroachment at all into the Morris Road right-of-way. (*See* R.R. at 130a; S.R.R. at 220b.)

15

March 12, 2018).[12] They argue that, under our holding in *Lake MacLeod,* applying Section 512.1 of the MPC,[13] 53 P.S. § 10512.1, the Board must explain in the Resolution why each waiver was necessary to avoid undue hardship based on conditions peculiar to the Property, which, they allege, the Board failed to do. They assert that the record contains no testimony or other evidence supporting any of the waivers the Board granted. Appellants also cite Section 512.1(b) of the MPC, 53 P.S. § 10512.1(b), which requires that "[a] request [for a waiver of a SALDO provision] shall state in full the grounds and facts of unreasonableness or hardship on which the request is based . . . and the minimum modification necessary." Appellants argue that Caracausa did not, in the Application, comply with Section 512.1(b).[14] In addition to those general arguments, Appellants argue that the Board erred in approving Waiver G in particular because that waiver effectively granted an exception to the "public street" requirement in Section 195-3 of the Zoning Ordinance—an exception the Board is not empowered to grant.

In response, the Board cites decisions of this Court, upholding waivers substantially similar to those at issue here, and argues that the waivers in this case meet the standard established in our earlier decisions. The Board emphasizes that it voted on each of the seven waivers separately at the public meeting and, before each vote, engaged in a thorough, on-the-record discussion of the hardship or

---

[12] Pursuant to Section 414(a) of this Court's Internal Operating Procedures, 210 Pa. Code § 69.414(a), an unreported panel decision issued by this Court after January 15, 2008, may be cited "for its persuasive value, but not as binding precedent."

[13] Added by the Act of December 21, 1988, P.L. 1329.

[14] We note that, unlike with their other arguments, Appellants did not raise the issue of the sufficiency of the Application at their earliest opportunity to do so, which was at the public meeting before the Board and well after the Application was submitted. Accordingly, Appellants have waived that issue, and we will not address it. *Campbell v. Dep't of Transp., Bureau of Driver Licensing*, 86 A.3d 344, 349 (Pa. Cmwlth. 2014).

16

unreasonableness justifying the waiver. The Board also cites Section 168-56 of the SALDO, which broadly provides that "the [Board] may waive any provisions of [the SALDO]." Owners add that *Lake MacLeod* is not binding precedent and is not persuasive, because it is readily distinguishable from the instant case.

In the Resolution, the Board explained each waiver it granted as follows:

A. Section 168-13.B - A waiver is requested from this provision of the [SALDO,] which requires a decision on the preliminary plan approval prior to submission for final plan approval. Applicant is requesting a waiver to permit preliminary and final plan approval concurrently.

B. Section 168-20.D(2)(a) and (c) - A waiver is requested from the provisions of the [SALDO] which requires [sic] a minimum street right[-]of[-]way of 54 feet, a 30-foot pavement width, a [four]-foot-wide sidewalk and curb. The applicant is requesting a waiver for Old Morris Road for right[-]of[-]way width, cartway widening, curb and sidewalk.

C. Section 168-20.D(2)(a) and (c) - Morris Road is a collector street. The minimum requirements for a collector street are 80-foot right[-]of[-]way, 52-foot pavement width, [five]-foot-wide sidewalk and curb. The Applicant is requesting a waiver from performing any improvements to and along Morris Road.

D. Section 168-21.O - A waiver is requested from this provision of the [SALDO], which requires that a driveway be no closer than [six] feet to a property line. Applicant is requesting a waiver to allow the driveway for Lot 2 to be installed [four] feet from Lot 1.

E. Section 168-22.B - A waiver is requested from this provision of the [SALDO], which requires a curb to be installed along and at the intersection of streets as directed by the Township and/or PennDOT. The Applicant is requesting a waiver from installing curbing along both Morris and Old Morris Roads.

F. Section 168-23.A. - A waiver is requested from this provision of the [SALDO], which requires sidewalks

17

to be installed where required except where, in the opinion of the Board of Commissioners, they are not necessary for public safety and convenience. The Applicant is requesting a waiver from installing sidewalks for both Morris and Old Morris Roads. There are no sidewalks adjacent to th[e P]roperty on either Morris Road or Old Morris Road.

G. Section[s] 168-4 and 168-8 - A waiver requested from the provisions of the [SALDO] which require a minor subdivision to have frontage on an improved public street and not require the extension of municipal facilities or the creation of any other public improvements. The Applicant proposes to extend Old Morris Road cartway within the existing Old Morris Road right[-]of[-]way from the end of the current cartway through and beyond the width of the proposed access strip.

(R.R. at 59a-60a.)

Section 512.1(a) of the MPC[15] authorizes a governing body such as the Board to modify the requirements of its SALDO if literal enforcement would produce undue hardship because of peculiar conditions inherent in the property at issue. In addition to the express standard in Section 512.1, we have held that "a waiver [is] proper where a development offers a substantial equivalent to a subdivision requirement, where an additional requirement would offer little or no additional benefit, and where literal enforcement of a requirement would frustrate the effect of improvements." *Monroe Meadows Hous. P'ship, LP v. Mun. Council of Mun. of*

---

[15] 53 P.S. § 10512.1(a).  Section 512.1(a) of the MPC provides:

The governing body . . . may grant a modification of the requirements of one or more provisions [of a SALDO] *if the literal enforcement will exact undue hardship because of peculiar conditions pertaining to the land in question*, provided that such modification will not be contrary to the public interest and that the purpose and intent of the ordinance is observed.

(Emphasis added.)

*Monroeville*, 926 A.2d 548, 553 (Pa. Cmwlth. 2007) (citing *Levin v. Twp. of Radnor*, 681 A.2d 860, 863-64 (Pa. Cmwlth. 1996)). The Board and Owners appear to concede that, for the Board's grant of SALDO waivers to be permissible, the waivers must meet either the express "undue hardship" standard in Section 512.1 of the MPC or the standard set forth in *Monroe Meadows* and *Levin*.[16] (*See* Board's Br. at 19-21; Owners' Br. at 11-12.) In reviewing a governing body's decision to grant or to deny waivers from its SALDO's provisions, we apply an abuse-of-discretion standard, determining whether evidence in the record supports the governing body's decision in light of the aforementioned standards for granting waivers. *See Ruf v. Buckingham Twp.*, 765 A.2d 1166, 1170 (Pa. Cmwlth. 2001); *Levin*, 681 A.2d at 864.

In *Lake MacLeod*, we held that a township board of supervisors erred in granting waivers from, *inter alia*, its SALDO. The ordinance required that a waiver be based on either (1) "undue hardship because of peculiar conditions pertaining to the land in question," or (2) "the use of . . . equal or better specification[s]" as compared with those required under the ordinance, a standard similar to the one we have discussed above. *Lake MacLeod*, slip op. at 25-26. Additionally, however, we noted that the SALDO in that case expressly required the board to include in its decision a written explanation of the basis for granting or denying any waivers

---

[16] Unlike in many of the SALDOs underlying our prior decisions on this point, Section 168-56 of the SALDO authorizes the Board to waive any provision of the SALDO and does not expressly impose conditions on that waiver power. Notably, however, neither the Board nor Owners take the position that Section 168-56 authorizes the Board to grant waivers without regard to the requirements found in Section 512.1 of the MPC and our prior decisions. This is consistent with Section 503(8) of the MPC, 53 P.S. § 10503(8), which authorizes governing bodies to adopt SALDO provisions providing SALDO waivers (such as Section 168-56), but only when literal enforcement would be "unreasonable, . . . cause undue hardship, or when an alternative standard can be demonstrated to provide equal or better results."

19

requested. *Id.* After extensive review, noting that the board's decision did not include such a written explanation, we concluded that the board erred in granting the waivers. *Id.*, slip op. at 26-27. Thus, we distinguish *Lake MacLeod* because our holding there relied heavily on a SALDO requirement (for a written explanation of each waiver) that is not present in this case. We rely here, instead, on the standard for waivers established in Section 512.1 of the MPC and our decisions applying it, as discussed above.

As was discussed at the public meeting before the Board, many of the waivers granted pertain to SALDO provisions requiring construction of various improvements. The literal enforcement of these standards would offer no additional benefit and would obviously frustrate the purpose of the required improvements (which, in some cases, would serve no purpose at all). Waivers B and C (minimum right-of-way, pavement, and sidewalk width on Morris and Old Morris Roads) were justified because the required minimum dimensions vary wildly from the existing dimensions of Morris and Old Morris Roads, and, presumably, to change the existing dimensions would be impractical and wasteful. Waiver E (construction of curbs at intersection of Morris and Old Morris Roads) was justified because, although those streets technically intersect on paper, construction of curbing would not make sense given that the cartways of the two streets do not actually intersect. Similarly, in the Resolution, the Board explained Waiver F (sidewalk construction) by stating that "there are no sidewalks adjacent to th[e P]roperty on either Morris Road or Old Morris Road." (R.R. at 60a.) Thus, this waiver was justified, as any sidewalk Caracausa might construct would literally lead nowhere. The existing conditions justifying these waivers are depicted in the record through the Plan, and, therefore,

20

the Board's decision not to require literal compliance with the associated SALDO provisions was not an abuse of discretion.

Similarly, with respect to Waiver D (driveway setback requirement), the record supports the Board's exercise of discretion. As discussed at the public meeting before the Board, Caracausa moved a portion of the proposed driveway closer to the Lot 1 boundary to accommodate the fire marshal's request for a 12-foot width (as opposed to a 10-foot width) for the driveway. (*Id.* at 125a.) Correspondence from the fire marshal reveals that this additional width is necessary to create an adequate turning radius so that emergency vehicles can make the 90-degree turn from the unusually narrow Old Morris Road onto Lot 2. (*Id.* at 55a.) Thus, the record supports the proposition that literal enforcement of the setback requirement to the Property's unique configuration would produce undue hardship, and the Board did not abuse its discretion in granting Waiver D.

We find nothing in the record, however, which could have supported the Board's decisions to grant Waiver A (concurrent preliminary and final plan approval) and Waiver G (prohibition on construction of public improvements). No statement in the Application, the Resolution, or elsewhere in the record explains why Caracausa sought these waivers or why the Board granted them. With respect to Waiver A, the only explanation offered anywhere in the record was a statement at the public meeting that the Board has granted similar waivers "many times" in the past. (*Id.* at 123a.) This assertion does nothing to explain why Caracausa's proposed deviation from the SALDO's requirement of sequential approvals is reasonable, substantially equivalent to compliance, justified by hardship, or otherwise permissible under our prior decisions regarding waiver. Accordingly, the Board abused its discretion in granting Waiver A.

Similarly, with respect to Waiver G, the record contains no support for the Board's conclusion that strict enforcement of the SALDO was not appropriate. On appeal, the Board emphasizes that Caracausa sought this waiver in case the paving of the Disputed Area were to be considered an extension of Old Morris Road (*i.e.*, construction of a public improvement), which is not permitted as part of a minor subdivision application under the Ordinance. (*See* Board's Br. at 23.) This reasoning echoes the statements, made at the Board's public meeting, that Caracausa sought Waiver G "in the abundance of caution . . . because Old Morris [Road] is not improved."[17] (*Id.* at 127a.) In other words, the only indication of a basis for Waiver G in the record is that, for some reason, Caracausa preferred to proceed under the minor subdivision procedures of the SALDO, regardless of whether construction of public improvements was actually necessary. No discussion, correspondence, or other evidence in the record explains a legally sufficient reason for that preference, whether founded on undue hardship, substantial equivalence to SALDO compliance, or any other permissible basis. We conclude, therefore, that the Board abused its discretion in granting Waiver G.[18]

---

[17] Waiver G was granted with respect to SALDO provisions requiring "the access strip [for Lot 2] to abut an[] . . . *improved* public street," such that no extension or improvement of the public street would be necessary. (R.R. at 126a-127a (emphasis added).) Given that understanding, Waiver G was essentially a waiver of a SALDO requirement that was more stringent than the Zoning Ordinance's requirement (which, as we have discussed, is satisfied by connection to an *unimproved* public street). Thus, we do not agree with Appellants that the Board improperly waived a provision of the Zoning Ordinance.

[18] In passing, we note some equivocation below as to whether Waiver G was necessary at all. On one hand, the language of Waiver G, as set forth in the Resolution, suggests that the Board considered the paving in the Disputed Area to be an "exten[sion]" of the existing pavement of Old Morris Road and, therefore, a public improvement requiring a waiver to be approved under the minor subdivision process. (R.R. at 60a.) On the other hand, at the public meeting before the Board, the Township's engineer consistently responded to Appellants' clarifying questions by stating that, although the proposed paving would have the practical effect of extending the road, **(Footnote continued on next page…)**

# IV. CONCLUSION

For the reasons set forth above, we reverse common pleas' order.

_____

P. KEVIN BROBSON, Judge

---

the paving was really a private "driveway" constructed within the public right-of-way. (*Id.* at 110a-18a.) This latter view is consistent with the statement that Caracausa requested Waiver G in an "abundance of caution," implying that it might not be necessary because no public improvements were being constructed. Regardless, the Board abused its discretion in granting Waiver G without a legally sufficient reason for doing so, and we need not address this equivocation further.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

James M. Ellzey and                          :
Kathie A. Ellzey,                            :
                         Appellants          :
                                             :
            v.                               :    No. 990 C.D. 2019
                                             :
Upper Gwynedd Township                       :
Board of Commissioners and                   :
Kurt R. Hague and Caren A. Hague             :
and Caracausa Building and                   :
Development                                  :

# **O R D E R**


AND NOW, this 19th day of November, 2020, the order of the Court of Common Pleas of Montgomery County, dated June 20, 2019, is REVERSED.


                                   _____
                                   P. KEVIN BROBSON, Judge