IN THE COMMONWEALTH COURT OF PENNSYLVANIA

23 Max, LLC,                  :
                                       :
                  Appellant    :
                                         :
              v.               : No. 996 C.D. 2024
                                         : Argued: April 8, 2025
Township of Maxatawny and    :
Township of Maxatawny Board    :
of Supervisors                      :

BEFORE:     HONORABLE MICHAEL H. WOJCIK, Judge
                    HONORABLE CHRISTINE FIZZANO CANNON, Judge
                    HONORABLE LORI A. DUMAS, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE WOJCIK                   FILED: May 5, 2025

23 Max, LLC (Applicant) appeals the order of the Berks County Court of Common Pleas (trial court) affirming the decision of the Township of Maxatawny Board of Supervisors' (Township and Board, respectively) decision that denied Applicant's application for conditional use approval (Application)[1] under the

---

[1] Section 603(c)(2) of the Municipalities Planning Code (MPC), Act of July 31, 1968, P.L. 805, *as amended*, 53 P.S. §10603(c)(2) states, in relevant part: "Zoning ordinances may contain . . . provisions for conditional uses to be allowed or denied by the governing body . . . pursuant to express standards and criteria set forth in the zoning ordinance. . . .". *See also* Section 909.1(b)(3) of the MPC, added by the Act of December 21, 1988, *as amended*, 10909.1(b)(3) ("The governing body . . . shall have exclusive jurisdiction to hear and render final adjudications . . . [on **(Footnote continued on next page…)**

Township's Zoning Ordinance (Ordinance)[2] to construct and use a warehouse building and supporting site improvements on a parcel of property (Property) in the Township. We affirm.

---

a]pplications for conditional use under the express provisions of the zoning ordinance pursuant to [S]ection 603(c)(2)."); Section 913.2(a), added by the Act of December 21, 1988, *as amended*, 53 P.S. §10913.2(a) ("Where a governing body, in zoning ordinances, has stated conditional uses to be granted or denied by the governing body pursuant to express standards and criteria, the governing body shall hold hearings on and decide requests for such conditional uses in accordance with such standards and criteria. . . . In granting a conditional use, the governing body may attach such reasonable conditions and safeguards, in addition to those expressed in the ordinance, as it may deem necessary to implement the purposes of this act in the zoning ordinance.").

As this Court has explained:

> A conditional use is a special exception which falls within the jurisdiction of the municipal legislative body rather than the zoning hearing board. The municipal legislative body may grant a conditional use pursuant to express standards and criteria set forth in the zoning ordinances enacted pursuant to the police powers to regulate land use. The fact that a use is permitted as a conditional use, rather than prohibited, reflects a legislative decision that the use is not *per se* adverse to the public interest.
>
> In order to demonstrate that the applicant is entitled to the conditional use, the applicant initially bears the burden of establishing that the application complies with the objective standards and criteria of the particular ordinance. Satisfaction of the applicant's burden establishes a legislative presumption that the use is consistent with the health, safety, and welfare of the community. Once the applicant has satisfied this initial burden, the burden shifts to the objectors to rebut this presumption by establishing that the use will have a detrimental impact on the surrounding community.

*In re Richboro CD Partners, L.P.*, 89 A.3d 742, 745 (Pa. Cmwlth. 2014) (citations omitted).

[2] Township of Maxatawny, Berks County, Pa., Zoning Ordinance of 2012, No. 2012-06, *as amended*.

2

The facts of this case, as found by the Board,[3] may be summarized as follows. The Property that is the subject of this appeal contains approximately 128.19 acres of land across three different tax parcels, and is located at 310 Hilltop Road, in the Township's L-1 Light Industrial and AP Agricultural Preservation zoning districts. Applicant is a limited liability company with a mailing address in Allentown, Lehigh County, while the property owners are Anna Haaf Tercha and Kate E M Co-Trustee (together, Owners), with a mailing address in an unincorporated area of Upper Macungie Township, Lehigh County. *See* 126 The Pennsylvania Manual 6-26, 6-42, 6-101 (2024).[4]

Applicant submitted the Application, dated December 15, 2022, to the Board to permit the Property to be developed into a 954,700-square-foot warehouse and supporting site improvements.[5] The Board conducted hearings on the

---

[3] Where the trial court takes no additional evidence in a conditional use matter, our review is limited to considering whether the Board erred as a matter of law or abused its discretion, which occurs when the Board's findings of fact are not supported by substantial evidence. *Williams Holding Group, LLC v. Board of Supervisors of West Hanover Township*, 101 A.3d 1202, 1212 n.8 (Pa. Cmwlth. 2014). As the finder of fact, it is the Board's responsibility to make credibility determinations and assess the weight to be assigned to the evidence. *Joseph v. North Whitehall Township Board of Supervisors*, 16 A.3d 1209, 1218 (Pa. Cmwlth. 2011).

[4] *See also Emert v. Larami Corporation*, 200 A.2d 901, 902 n.1 (Pa. 1964) ("Courts will take judicial notice of geographical facts such as the county in which a town or city is located.") (citations omitted).

[5] Specifically, Applicant proposed the following development of the Property:

> The plan proposes to consolidate three (3) parcels and subdivide into two (2) parcels. Development is proposed on Lot 1 only, which will include construction of a 954,770-square-foot warehouse building. Site improvements include parking areas, sidewalk, stormwater management facilities, on-lot utilities, and landscaped areas. [A]pplicant requests conditional use approval for the warehouse use on Lot 1.

**(Footnote continued on next page…)**

3

Application on May 31, 2023; July 6, 2023; August 8, 2023; September 19, 2023; October 25, 2023; December 5, 2023; and January 16, 2024.

In support of the development of the Property, Applicant presented, *inter alia*, the testimony of the licensed professional engineer for the project, Thomas Dredge (Dredge), who was admitted as an expert in the field of civil engineering by the Board. *See* Reproduced Record (RR) at 43a-152a, 163a-254a. Regarding Applicant's interest in the Property, Dredge testified that Applicant in fact has an agreement of sale, but he did not "know the particulars of the agreement itself" and that "the only portion proposed for any type of development is on the eastern side of Hilltop [Road]." *Id.* at 167a.[6]

---

Reproduced Record (RR) at 851a. As the Board noted: "The Property is currently used for agriculture[, and t]he proposed warehouse and supporting site improvements will be located entirely within the L-1 zoning district." *Id.* at 4a.

[6] More specifically, Dredge testified, in pertinent part, as follows:

> Q      Okay. And my understanding and according to Berks County and Maxatawny Township records is that the entire tract is 132.9 acres?
> A      Well, again, there [are] multiple --
>
> Q      Lots.
> A      -- multiple parcels, yes.
>
> Q      Yeah, consisting of four lots. Lot 1 according to the tax records is where you're proposing the building, is that correct, your warehouse?
> A      So there [are] three existing parcels.
>
> Q      Not four?
> A      No, three existing parcels. And the primary parcel is split by Hilltop [Road], and maybe that's where there is some confusion. But this primary lot is split by Hilltop. It's on the east and west side

**(Footnote continued on next page…)**

of Hilltop Road. And then there [are] two smaller parcels at the southern end of the project.

Q      Okay. According to the records, Lot 1 includes the largest area on the east side of Hilltop as well as all the property on the west side of Hilltop, and the wooded area north of that large area where you are proposing the warehouse be built up around the top[,] which is another, I'm guessing, [eight] acres; is that correct?
A      That's all -- this is all one lot. So[,] it's all the same -- this is all the same lot here.

Q      Okay.
A      You mentioned an [eight]-acre wooded parcel that's all part of this, the primary lot, the primary existing parcel.

Q      And Anna Haaf Tercha passed away several months ago. And I believe her daughter Kate E.M. Tercha would be the current owner[?]
A      Yeah, this does say trustee in parentheses. I don't know the exact.[ . . .]

Q      Yeah, I believe you stated last time there [are] no plans to develop west of -- the tract west of Hilltop Road; is that correct?
A      Yes.

Q      What about the [eight]-some acres wooded and land on top of the hill?
A      This area up here?

Q      Yes.
A      The northernmost part. The only improvements in that area are potentially some roadway widening that's required per the Township Ordinance, and then potentially a small stormwater system, underground system to manage the additional runoff from that roadway widening. But no land development, I would say, aside from that.

Q      You say land development[;] do you also mean building?
A      Correct.

**(Footnote continued on next page…)**

In addition, a number of adjacent landowners appeared at the Board hearings in opposition to the Application and were granted party status in the proceedings. In particular, Robert Grim, Esq. (Grim), appeared, testified, and cross-examined Applicant's witnesses throughout the hearings. In relevant part, Grim argued that Applicant did not have standing to submit the Application to the Board

Q    Okay. All right. To the right of your map, plan there, on the lower part, according [to] the records, they are Lots 2 and 3. Lot 3 goes across Hilltop Road a little bit?
A    Yes, there is a sliver here.

Q    A sliver?
A    Yes.

Q    What are your plans for Lots 2 and 3?
A    So those lots will be combined with the larger lot. And then the portion west of Hilltop would be subdivided off. So those would essentially become part -- all part of the same property.

Q    Okay. You have a conditional sales agreement[;] I assume you do?
A    I don't, but [] Applicant does.

Q    Okay. And that's for what part of the property, 132.94 acres, or just the parts that are being developed for the warehouse?
A    I don't know the particulars of the agreement itself. All I can say is that the only portion proposed for any type of development is on the eastern side of Hilltop.

Q    Okay. You used the term subdivided. Subdivide by whom and to whom?
A    The properties east of Hilltop would be sold to [] Applicant.

Q    Right.
A    And the property west would remain with the current owner.

RR at 164a-68a.

6

in the first instance because Applicant did not have an interest in the land to be developed thereunder. *See, e.g.*, RR at 806a-10a.[7]

Ultimately, on February 28, 2024, the Board issued a decision denying the Application. *See* RR at 103a-12a. In pertinent part, the Board found as fact that "Applicant did not submit an agreement of sale or a conditional agreement of sale for the Property to show that it has actual or equitable ownership of the Property." *Id.* at 105a. Likewise, the Board made the following relevant Conclusion of Law:

> 7.      The [Board] has determined that [] Applicant, through the Application, exhibits, and testimony at the Conditional Use Hearing, has failed to establish compliance with [the relevant sections of the Ordinance] to permit the construction and use of a 954,770-square-foot warehouse building and supporting site improvements on the Property, based on the following:

---

[7] More specifically, in pertinent part, Grim stated:

> So, my point is this, the plan in front of you is a fraud. It does not show you exactly what the legal status is of this developer. And if you think that's not enough, I have searched the record in this case and the fact that the developer never even submitted an agreement of sale that he may have or may not have, there's nothing in the record to indicate that this developer has any right to be in front of you to present a plan in writing that he has a written agreement of sale. That's important. I'll tell you why because first thing you'll learn in law school about property is what we call the statute of frauds.
>
> The statute of frauds very simply says that you can't [en]force an agreement or use an agreement for anything concerning real estate unless it's in writing. They have nothing in writing. And these are simple legal principles that have not been followed in this case and are enough for the [Board] to turn down this [A]pplication.

RR at 809a-10a.

a. Applicant failed to show that it has a real or equitable interest in the Property.

*Id.* at 9a. Accordingly, the Board issued its decision denying the Application because, among other things, "Applicant failed to show that it has a real or equitable interest in the Property." *Id.* at 11a. On Applicant's appeal, the trial court affirmed the Board's decision, and Applicant filed the instant appeal of the trial court's order.

On further appeal to this Court, Applicant first claims that the Board erred in denying the Application because Applicant "produce[d] substantial evidence demonstrating compliance with all specific conditional use requirements for its warehouse use." Appellant's Brief at 9. In particular, Applicant takes issue with the Board's decision regarding standing, noting that the Ordinance required it to submit the Application to the Township for a determination of zoning compliance. *Id.* at 14. Applicant asserts that it also appeared before the Township's Planning Commission as an equitable owner of the Property, that the "Commission reviewed and commented on [] Applicant's Plans, which plans were signed and sealed by a professional engineer licensed in the [Commonwealth]," and that "[t]hose plans contain multiple clear and obvious legal certifications that [Applicant] is the equitable owner of the [] Property." *Id.* Moreover, "[n]either the [Township's] zoning officer nor the Planning Commission showed any interest in [Applicant's] agreement of sale." *Id.* As a result, Applicant alleges:

> In adopting [] Grim's legal position, the [Board] abused [its] discretion and committed an error of law. Neither the [Board] nor the trial court cite any authority for the proposition that a conditional use applicant with equitable title must introduce an agreement of sale. Such authority does not exist. In reaching this conclusion, the [Board] abused [its] discretion and committed an error of law.

8

*Id.* at 17 (footnote omitted).[8]  Contrary to Applicant's assertions, the Board did not err or abuse its discretion in determining that Applicant failed to present sufficient

_____

[8] It should be noted that in Applicant's Pa.R.A.P. 1925(b) Statement of Errors Complained of on Appeal (Statement) filed in the trial court, Applicant raised the following claim of error in this regard:

> 1.    The Board denied the proposed conditional use without citation to particular [O]rdinance provisions.  By way of example, the Board denied the conditional use for failure to submit an agreement of sale without citing legal authority requiring that an agreement of sale be part of the record.

RR at 881a.

As this Court has recently explained:

> "[Pa.R.A.P.] 1925(b) sets out a simple bright-line rule, which obligates an appellant to file and serve a Rule 1925(b) statement, when so ordered."  "[F]ailure to comply with the minimal requirements of Pa.[]R.A.P. 1925(b) will result in automatic waiver of the issues raised," even where granting relief has equitable appeal.  The Supreme Court has explained that requiring "a bright-line rule eliminates the potential for the inconsistent results that existed . . . when trial courts and appellate courts had discretion to address or to waive issues raised in non-compliant Pa.[]R.A.P. 1925(b) statements."  Accordingly, "the Rule's provisions are not subject to *ad hoc* exceptions or selective enforcement[, and] appellants and their counsel are responsible for complying with the Rule's requirements."

*Bertino v. Tax Claim Bureau of Bucks County* (Pa. Cmwlth., No. 705 C.D. 2022, filed December 12, 2023), slip op. at 7 (citations omitted); *see also Arnold v. Workers' Compensation Appeal Board (Lacour Painting, Inc.)*, 110 A.3d 1063, 1071 (Pa. Cmwlth. 2015) ("Our courts permit a litigant to make new arguments on appeal in support of a preserved issue, but do not permit a party to advance an entirely new and different theory of relief for the first time on appeal.") (citations omitted); Pa.R.A.P. 126(b)(1)-(2) ("As used in this rule, 'non-precedential decision' refers to . . . an unreported memorandum opinion of the Commonwealth Court filed after January 15, 2008. Non-precedential decisions . . . may be cited for their persuasive value.").  Accordingly, we will
**(Footnote continued on next page…)**

evidence to satisfy its initial burden[9] to establish standing to prosecute the instant Application before the Board.

Section 107(a) of the MPC defines "applicant" as "a landowner or developer, as hereinafter defined, who has filed an application for development including his heirs, successors and assigns." 53 P.S. §10107(a). In turn, Section 107(a) defines "landowner" as "the legal or beneficial owner or owners of land

---

review Applicant's allegation of error to the extent that it has been properly preserved below for our review.

[9] As this Court has observed:

> The applicant bears the burden of establishing that the proposed conditional use satisfies the criteria in the zoning ordinance. [*In re Drumore Crossings, L.P.*, 984 A.2d 589, 595 (Pa. Cmwlth. 2009)]. The board is the factfinder, with the responsibility for credibility determinations and the weight to assign the evidence. *Joseph*, 16 A.3d at 1218. If the board is persuaded that the application complies with the zoning ordinance, a presumption arises that "the proposed use is consistent with the general welfare of the community." *H.E. Rohrer, Inc. v. Zoning Hearing Board of Jackson Township*, 808 A.2d 1014, 1018 (Pa. Cmwlth. 2002).

*Kretschmann Farm, LLC v. Township of New Sewickley*, 131 A.3d 1044, 1053 (Pa. Cmwlth. 2016); *see also Radnor Development Company, LP v. Board of Supervisors of Hereford Township* (Pa. Cmwlth., No. 556 C.D. 2011, filed February 7, 2012), slip op. at 6, wherein this Court stated:

> While it is true that standing may be waived when not raised before a zoning hearing board, *Collier Stone Co*[*mpany*] *v. Township of Collier Board of Commissioners*, 735 A.2d 768 (Pa. Cmwlth. 1999), it was [the applicant's] burden to establish that it was an equitable owner with sufficient interest to seek zoning relief. *See Borough of Braddock v. Allegheny County Planning Dep*[*artment*], 687 A.2d 407 (Pa. Cmwlth. 1996) (railroad presented sufficient indicia of ownership to establish standing). As the [b]oard and common pleas concluded, the evidence that [the applicant] chose to rely upon, an admittedly expired agreement of sale, simply did not meet this burden.

10

including the holder of an option or contract to purchase (whether or not such option or contract is subject to any condition), a lessee if he is authorized under the lease to exercise the rights of the landowner, or other person having a proprietary interest in land." *Id.* Finally, Section 107(a) defines "developer" as "any landowner, agent of such landowner, or tenant with the permission of such landowner, who makes or causes to be made a subdivision of land or a land development." *Id.*

In this regard, this Court has previously noted:

> Section 107 of the MPC defines "applicant" as "a landowner or developer . . . who has filed an application for development" and a "landowner" as "the legal or beneficial owner or owners of land including the holder of an option or contract to purchase[,] . . . a lessee if he is authorized under the lease to exercise the rights of the landowner, or other person having a proprietary interest in land." In *Tioga Preservation Group* [*v. Tioga County Planning Commission*, 970 A.2d 1200 (Pa. Cmwlth. 2009)], this Court considered, *inter alia*, whether a lease option agreement conferred a property interest sufficient to make the holder of the option an applicant/landowner under the MPC. [*Id.*] at 1203-04. The lease option agreement at issue in *Tioga Preservation Group* granted the holder of the option "an exclusive easement during the option period, allowing [it] to enter the property to perform various studies to determine the suitability of the property for the [p]roject." *Id.* at 1204. Based on the language of the lease option agreement, this Court held that the holder of the option was a proper applicant under the MPC. *Id.* In so doing, this Court stated that "[i]t is clear from the terms of the [lease o]ption [a]greement that the owners of the subject properties have granted [the holder of the option] an interest beyond that of a 'proposed leaseholder' and have conferred upon [the holder of the option] a proprietary interest in the subject properties." *Id.*

11

*SBA Towers IX, LLC v. Unity Township Zoning Hearing Board*, 179 A.3d 652, 662-63 (Pa. Cmwlth. 2018).[10]

In contrast, in this case, the ***only*** evidence cited by Applicant to support a finding of standing under the MPC and the Ordinance is Dredge's testimony, as a non-party to a non-existent conditional sales agreement,[11] that Applicant, in fact, entered into a conditional sales agreement with the Property's owners, but that he

---

[10] Likewise, as the trial court made clear:

> The definition of "Landowner" in the [Township's] Ordinance is consistent with established Pennsylvania law. It has long been held that an equitable owner under a conditional contract to purchase real estate stands in the same position as a legal owner does when seeking zoning relief. It is incumbent upon an applicant for zoning relief to come forth with ***evidence*** detailing how it is going to be in compliance with the requirements necessary to obtain relief. "Evidence is not a 'promise' that the applicant will comply because that is a legal conclusion the Board makes once it hears what the applicant intends to do and then determines whether it matches the requirements set forth in the ordinance."

RR at 893a (citations omitted and emphasis in original).

[11] As this Court has explained: "An appellate court is limited to considering only those facts that have been duly certified in the record on appeal. For purposes of appellate review, that which is not part of the certified record does not exist." *B.K. v. Department of Public Welfare*, 36 A.3d 649, 657 (Pa. Cmwlth. 2012) (citation omitted); *see also Montgomery County Conservation District v. Bydalek*, 261 A.3d 1073, 1079 n.8 (Pa. Cmwlth. 2021), wherein we stated:

> The MCCD also maintains that it was carrying out duties delegated to it by the [Pennsylvania] Department of Environmental Protection pursuant to its Delegation Agreement, which it attached as part of the Reproduced Record. However, the Delegation Agreement is not part of the original record as transmitted to this Court. "The law is well settled that an appellate court may not consider documents that are not part of the [original] record." *Township of Neshannock v. Kirila Contractors, Inc.*, 181 A.3d 467, 472 (Pa. Cmwlth. 2018).

(Citation to record omitted).

12

did not "know the particulars of the agreement itself," *see* RR at 167a, and Dredge's assertion in the conditional use plans that were submitted to the Township's Planning Commission that Applicant is the "Equitable Owner" of the Property. *See id.* at 853a-57a.[12] There is simply **no direct evidence** in this case of the nature and/or extent of Applicant's legal or equitable interest in the Property to support its standing to prosecute the Application before the Board. *See, e.g.*, *Worthington v. Mount Pleasant Township*, 212 A.3d 582, 589-90 (Pa. Cmwlth. 2019) ("[T]o be a party to a zoning hearing, one must have . . . substantive standing (*e.g.*, 'sufficient interest in the outcome of the litigation to be allowed to participate. . . . – . . . an interest that is direct, immediate and substantial[.]'). Substantive standing 'is required at all levels of proceedings[.]'") (citation omitted).[13] As a result, the Board did not err or abuse its discretion in denying the Application based on Applicant's lack of standing.

---

[12] In addition, to the extent that Dredge's assertions, standing alone, are competent to establish the existence of a conditional sales agreement between Applicant and the landowners to support Applicant's standing herein, as the trial court explained: "It was well within the scope of the authority of the Board to have been unconvinced by this line of questioning, particularly when counsel is assuming the existence of a conditional sales agreement, the witness does not possess a conditional sales agreement, and, to the extent it exists, the witness does not know the particulars of the agreement." RR at 895a; *see also* Board Conclusion of Law 7(a), RR at 9a ("The [Board] has determined that [] Applicant, through the Application, exhibits, and testimony at the Conditional Use Hearing, . . . failed to show that it has a real or equitable interest in the Property[.]"); *Tennyson v. Zoning Hearing Board of West Bradford Township*, 952 A.2d 739, 743 n.5 (Pa. Cmwlth. 2008) ("This Court may not substitute its interpretation of the evidence for that of the [board].") (citation omitted).

[13] Moreover, as the trial court noted, Applicant was well aware of this evidentiary issue prior to the Board hearings:

> Other evidence in this case, however, belied any assertion that [Applicant] had an enforceable interest in the [Property]. Among this evidence was a letter from the Pennsylvania Department of Transportation (hereinafter referred to as "[DOT]"), issued on January 12, 2023, referencing Hilltop Road. This letter was issued

**(Footnote continued on next page…)**

13

Accordingly, the trial court's order is affirmed.[14]

_____
MICHAEL H. WOJCIK, Judge

_____

in response to [Applicant's] application for a highway occupancy permit. In that response, [DOT] said:

> [(1)] The application must be submitted in the name of the person who holds fee title to the land or a person who holds an estate or other legal interest in the property, such as an easement, a lease, a license, subsurface rights, or an equitable interest under a sales agreement or option to purchase.
>
> The applicants must be the individuals listed on the agreement of sale. **[*Applicant*] *is not listed on the agreement of sale and therefore cannot be the applicant.*** Also, provide the current deed for the [P]roperty.
>
> If the fee owner of the property, along with documentation showing the applicant's interest in the property, please provide additional documentation required under 67 Pa. Code [§]441.3(b), and Publication 282, Chapter 2 - Driveway Applicant other than a Fee Owner.

*See* Board Exhibit No. 26 ([e]mphasis added).
RR at 894a.

[14] Based on our disposition of this issue, we will not consider Applicant's additional claims of error on the merits of the Application.

14

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

23 Max, LLC,                  :

                                :

               Appellant   :

                                :

         v.             :  No. 996 C.D. 2024

                                :

Township of Maxatawny and   :

Township of Maxatawny Board  :

of Supervisors               :

# **O R D E R**

AND NOW, this 5th day of May, 2025, the order of the Berks County Court of Common Pleas dated July 3, 2024, is AFFIRMED.

_____

MICHAEL H. WOJCIK, Judge